### In re The BOULEVARD ENTERTAINMENT, INC.

No. 02–1585.

United States Court of Appeals, Federal Circuit.

July 9, 2003.

David Gurnick, Arter & Hadden LLP, of Woodland Hills, CA, argued for appellant. With him on the brief was Tal S. Grinblat.

John M. Whealan, Solicitor, United States Patent and Trademark Office, of Arlington, VA, argued for appellee. With him on the brief were Cynthia C. Lynch, and Raymond T. Chen, Associate Solicitors. Of counsel was Nancy C. Slutter, Associate Solicitor.

Before NEWMAN, BRYSON and LINN, Circuit Judges.

BRYSON, Circuit Judge.

This appeal from the Trademark Trial and Appeal Board ("TTAB") of the United States Patent and Trademark Office ("PTO") involves section 2(a) of the Trademark Act, 15 U.S.C. § 1052(a), which precludes registration of marks that consist of or comprise "immoral, deceptive, or scandalous matter." Appellant The Boulevard Entertainment, Inc. ("Boulevard") seeks to register "1–800–JACK–OFF" and "JACK–OFF" as marks on the Principal Register for "entertainment in the nature of adult-oriented conversations by telephone." The examining attorney refused to register the marks under section 1052(a), and the TTAB affirmed the refusal to register on the ground that the marks consist of or comprise scandalous matter. Because substantial evidence supports the TTAB's finding that the term "jack-off" is an offensive and vulgar reference to masturbation and that Boulevard's use of the marks refers to that meaning, we affirm.

## I

Boulevard provides adult entertainment services over the telephone. Customers can dial alphanumeric numbers to contact Boulevard's telephone actors and actresses, who offer adult-oriented conversations for a fee. Boulevard alleges that it receives more than 1.2 million phone calls per year to its "JACK–OFF" brand phone numbers.

On January 6, 1998, Boulevard applied to register "1–800–JACK–OFF" based on its "actual use of that mark for telephone entertainment services, namely interpersonal telephone services for adults." On January 21, 1998, Boulevard applied to register "JACK–OFF" based on an intent to use that mark for the same services. Boulevard subsequently modified the description of its services to "entertainment in the nature of adult-oriented conversations by telephone."

In office actions dated June 9, 1998, the examining attorney refused registration of the marks on the ground that they comprised immoral and scandalous matter. The examining attorney relied on definitions in four dictionaries to conclude that the term "jack-off" is offensive and vulgar. The examining attorney consulted *Webster's Collegiate Dictionary*, which defines the term to mean "masturbate" and notes that it is "usu. considered vulgar." The examining attorney also found the word in *Forbidden American English*, a book intended "for persons who seek guidance in avoiding giving offense with potentially offensive vocabulary." The examining attorney explained that two other specialized dictionaries, *American Slang* and *Historical Dictionary of American Slang*, define the term as meaning "to masturbate" and that both designate the word as vulgar. Several of the dictionaries, the examining attorney pointed out, provide an alternative definition as meaning "a stupid, incompetent person = jerk," a "worthless jerk"

and "a dolt; idiot," but each of those alternative definitions is also designated as vulgar or "forbidden."

The examining attorney noted that Boulevard had submitted evidence from the Lexis/Nexis Research Database consisting of four items that included the term "jack-off." In response, the examining attorney conducted a search of the same database for the period October 1, 1998, through October 1, 1999. She reported that the search produced unrelated references, such as "she dropped Jack off at school" and references to a rock music group known as "Jack off Jill," but she attached 15 excerpts that used the term in a relevant manner. Those 15 excerpts, she pointed out, appeared only in non-mainstream publications, which she regarded as evidence of the offensive nature of the term "jack off" to a substantial composite of the general public.

Boulevard appealed the rejection to the TTAB, which affirmed the refusal to register the marks. The TTAB determined that while the dictionaries cited by the examining attorney contain two definitions for "jack-off," both definitions are vulgar. The TTAB also concluded that Boulevard's use of the marks in relation to adult entertainment refers only to masturbation and not to the alternative meaning of a stupid or incompetent person. In addition, the TTAB found that the evidence reviewed by the examining attorney made clear that Boulevard uses the words in a vulgar or derogatory manner. The TTAB therefore concluded that the examining attorney had established a prima facie case that the marks were scandalous. Because the TTAB found Boulevard's proffered evidence insufficient to overcome that prima facie case, it affirmed the examining attorney's determination that the term "jack-off" was offensive to a substantial composite of the general public and thus preclud-

ed from registration under section 1052(a). Boulevard has appealed the TTAB's decision to this court.

## II

▮▮▮▮▮ To justify refusing to register a trademark under the first clause of section 1052(a), the PTO must show that the mark consists of or comprises "immoral, deceptive, or scandalous matter." *In re Mavety Media Group, Ltd.*, 33 F.3d 1367, 1371 (Fed.Cir.1994). A showing that a mark is vulgar is sufficient to establish that it "consists of or comprises immoral ... or scandalous matter" within the meaning of section 1052(a). *See id.* at 1373–74 (analyzing a mark in terms of "vulgarity"); *In re McGinley*, 660 F.2d 481, 485 (CCPA 1981) (quoting with approval *In re Runsdorf*, 171 USPQ 443, 443–44 (TTAB 1971), which refused registration of a mark on grounds of vulgarity). In meeting its burden, the PTO must consider the mark in the context of the marketplace as applied to the goods described in the application for registration. *McGinley*, 660 F.2d at 485. In addition, whether the mark consists of or comprises scandalous matter must be determined from the standpoint of a substantial composite of the general public (although not necessarily a majority), and in the context of contemporary attitudes, *id.*, keeping in mind changes in social mores and sensitivities, *Mavety*, 33 F.3d at 1371. We review the TTAB's findings for substantial evidence. *In re Save Venice N.Y., Inc.*, 259 F.3d 1346, 1351 (Fed.Cir.2001).

▮▮▮ In finding Boulevard's marks to be vulgar, the examining attorney consulted four dictionaries, including the mainstream dictionary *Webster's Collegiate Dictionary*, all of which indicated that the word "jack-off" is offensive or vulgar when used to refer to masturbation. Boulevard argues that it was improper for the examining attorney to rely only on dictionary definitions and personal opinion to reject its application for registration. While it is true that the personal opinion of the examining attorney cannot be the basis for a determination that a mark is scandalous, dictionary definitions represent an effort to distill the collective understanding of the community with respect to language and thus clearly constitute more than a reflection of the individual views of either the examining attorney or the dictionary editors.

This court has not previously decided whether dictionary definitions alone can ever provide a sufficient basis for holding a particular mark to be scandalous. In *In re Mavety Media Group, Ltd.*, the court reversed the PTO's refusal to register a mark under section 1052(a) in a case in which the PTO relied solely on dictionary definitions. Because the evidence in that case showed that the mark at issue had multiple meanings, including a non-vulgar meaning, the court found the dictionary evidence offered in that case to be insufficient to support the PTO's finding that the mark was unregistrable on grounds of vulgarity. The court declined, however, to decide whether dictionary definitions alone would be sufficient to support a finding that a mark is scandalous in a case in which the mark has no alternative meaning. As the *Mavety* court explained, "[We] leave for another day the resolution of whether a standard dictionary definition and an accompanying editorial designation of vulgarity alone sufficiently demonstrates that a substantial composite of the general public considers that word scandalous, and consequently, whether the PTO may refuse under § 1052(a) to register a mark based solely on such standard dictionary evidence." *Mavety*, 33 F.3d at 1374.

▮▮▮ In this case, we answer the question left open in *Mavety* by holding that, in a case in which the evidence shows that

the mark has only one pertinent meaning, dictionary evidence alone can be sufficient to satisfy the PTO's burden. The dictionary definitions that the examining attorney reviewed in this case uniformly characterize the word "jack-off" as an offensive or vulgar reference to masturbation. Boulevard contends that the dictionaries also indicate that the term "jack-off" is sometimes used to mean a stupid or incompetent person. Irrespective of the fact that the dictionaries also characterize the term "jack-off" as vulgar or "forbidden" when used to refer to a stupid or incompetent person, it is clear that the marks as used by Boulevard in connection with the services described in Boulevard's application refer to masturbation. For example, Boulevard's advertisements make numerous references to masturbation and male orgasm, but contain no allusions to stupidity or incompetence. This case is therefore quite different from *Mavety*, in which the court noted that the applicant's use of the mark "BLACK TAIL" created a double entendre as either a vulgar reference to a female sexual partner or a non-vulgar reference to buttocks or the hindmost or rear end. *See Mavety*, 33 F.3d at 1373–74. In a case such as this one, in which multiple dictionaries, including at least one standard dictionary, uniformly indicate that a word is vulgar, and the applicant's use of the word is clearly limited to the vulgar meaning of the word, we hold that the PTO can sustain its burden of showing that the mark comprises or consists of scandalous matter by reference to dictionary definitions alone. In such instances, although other evidence, such as consumer surveys, would no doubt be instructive, *see id.* at 1374, the PTO's finding is not legally insufficient because of the absence of such evidence.

■ Boulevard complains that the dictionaries consulted by the examining attorney in this case are outdated, having copyrights as early as 1987, 1990, 1993, and 1997. According to Boulevard, the dictionary evidence therefore does not reflect current standards as to whether the marks would be regarded as vulgar.

By their nature, sources of evidence of community standards are typically based on an assessment made at a particular point in time and therefore are inherently subject to objection for being outdated as time passes. In this case, the application was filed in 1998 and the examination took place in 1998 and 1999, so the dictionaries cited by the examining attorney were fairly current at the time the examination took place. In order to mount a convincing challenge to a dictionary on the ground that it is outdated and therefore does not reflect current community standards, the opponent of the evidence should be expected either to present another authoritative dictionary from a later date that takes a different view of the meaning or acceptability of a word, or to make a persuasive showing through other evidence that the dictionary characterization of the term in question no longer accurately reflects commonly held views. Boulevard did not put in any evidence in the first category, and we are not persuaded that its evidence in the second category was sufficiently strong to overcome the prima facie case established by the dictionaries cited by the examining attorney.

The evidence that Boulevard offered to show that the term "jack-off" is not immoral or scandalous included a number of declarations from academics and business persons who attested that the term was not offensive. Those declarations, however, consist mainly of the personal opinions of the declarants as to the offensiveness of the term "jack-off" and therefore do not provide strong factual support for Boulevard's assertion that a substantial composite of the general public does not consider the term scandalous. The fact that Boule-

vard's declarants regarded the term, as one put it, as "moral, decent, and proper" falls far short of establishing that the term would not be regarded as vulgar by a substantial composite of the public. Moreover, Boulevard's assertion that sexually oriented publications are "willing without hesitation, indeed enthusiastic" to accept advertising featuring the term "jack-off" says nothing about whether the term would be vulgar to persons not involved in that industry, either as producers or consumers. The assertion on behalf of the company that provides telecommunications services to Boulevard that it is "enthusiastic to do business with Boulevard," and that "the company's representative does not find the word 'jack-off' to be offensive as a personal matter," also does not speak to whether the public, and in particular members of the public not having an economic relationship with Boulevard, would regard the term as vulgar.

Boulevard also produced a number of media references in an effort to demonstrate that its trademarks were not offensive to a substantial composite of the general public. Most of Boulevard's media references, however, do not contain the term "jack-off," but instead simply discuss the subject of masturbation. Those references are wholly irrelevant because, as the TTAB explained, its ruling was based on the vulgarity of the term "jack-off," not on any suggestion that other terms for, or a discussion of, masturbation would be vulgar. Moreover, with respect to the references using the term "jerk-off," the TTAB found that Boulevard had not established that the terms "jerk-off" and "jack-off" are equivalent in the degree to which they would be regarded as vulgar by a substantial composite of the public. The remaining media references, in which the term "jack-off" was used, were mostly from nonmainstream publications, as the examiner found upon reviewing a sample of media references from the Lexis/Nexis database.

With respect to the Lexis/Nexis evidence cited by the examining attorney, Boulevard objects that the examining attorney discussed only a minority of the 85 references she found in her search and that she did not indicate how the search was conducted or whether the references she discussed were representative. The examining attorney did not address in detail the methodology of her search, but her discussion of the search suggests that she reviewed all references to the word or words "jack off" in the Lexis/Nexis database for a one-year period and found only 15 that were relevant. To the extent that it was error for her not to provide a more thorough account of the search, any error was harmless, for several reasons. First, the examining attorney conducted the Lexis/Nexis search in response to Boulevard's submission of evidence from the same database; she used the results of the search to put Boulevard's evidence into perspective, rather than relying on it as a principal ground for her decision. Second, the TTAB did not rely on the examining attorney's conclusion that the limited number of references to the term "jack-off" that she encountered indicated that the term is unacceptable; the TTAB stated that "[n]o such conclusion can be drawn without substantially more evidence regarding, for example, the size of the database, the parameters of the search, and whether the excerpts in the record are representative of the Examining Attorney's entire search results." Third, the examining attorney's description of the search was sufficient to enable Boulevard to replicate it, and if the Lexis/Nexis database for the search period contained any relevant evidence other than the evidence that the examining attorney reported, Boulevard's attorneys were free to raise it. Fourth, even if the Lexis/Nexis evidence were disregarded altogether, the dictionary evidence alone would be sufficient to

satisfy the PTO's burden of showing that the marks are scandalous to a substantial composite of the general public. Accordingly, we reject Boulevard's contention that substantial evidence does not support the TTAB's finding that the term "jackoff" is regarded as vulgar by a substantial composite of the public and thus comprises immoral or scandalous matter within the meaning of section 1052(a).

### IV

■ Boulevard contends that the application of section 1052(a) to refuse the registration of marks on grounds of vulgarity violates the First Amendment. Previous decisions of this court and our predecessor court, however, have rejected First Amendment challenges to refusals to register marks under section 1052(a), holding that the refusal to register a mark does not proscribe any conduct or suppress any form of expression because it does not affect the applicant's right to use the mark in question. *See Mavety,* 33 F.3d at 1374; *McGinley,* 660 F.2d at 484. We adhere to the reasoning set forth in those cases and reject Boulevard's First Amendment challenge.

■ Boulevard also asserts that the PTO has registered other sexually oriented marks and that it accordingly violates Boulevard's rights under the equal protection component of the Due Process Clause of the Fifth Amendment for the PTO to refuse to register the marks at issue in this case. In particular, Boulevard cited the mark "JACK OFF JILL," which was registered for live performances by a musical group. The "JACK OFF JILL" mark, however, is distinguishable from the marks at issue in this case because it relates at least in part to the nursery rhyme involving Jack and Jill, and therefore creates a double entendre that is not present in Boulevard's marks. Similar double entendres are present in many of the other marks that Boulevard cites, and those marks are therefore likewise distinguishable from the ones at issue in this case. In any event, the PTO must decide each application on its own merits, and decisions regarding other registrations do not bind either the agency or this court. *In re Nett Designs,* 236 F.3d 1339, 1342 (Fed.Cir.2001). Even if the PTO had previously allowed a mark similar to Boulevard's marks to be registered, that would not give Boulevard an equal protection right to have its mark registered unless the agency acted pursuant to some impermissible or arbitrary standard. *See In re Int'l Flavors & Fragrances,* 183 F.3d 1361, 1368 (Fed.Cir.1999). The fact that, whether because of administrative error or otherwise, some marks have been registered even though they may be in violation of the governing statutory standard does not mean that the agency must forgo applying that standard in all other cases. The TTAB's decision in this case therefore does not violate the constitutional principles that Boulevard invokes.

*AFFIRMED.*