THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
Feb. 9, 2007

**UNITED STATES PATENT AND TRADEMARK OFFICE**

————

**Trademark Trial and Appeal Board**

————

In re Litehouse, Incorporated

————

Serial No. 78494701

————

Mark W. Hendrickson of Wells St. John P.S. for Litehouse, Incorporated.

Judith M. Helfman, Trademark Examining Attorney, Law Office 110 (K. Margaret Le, Managing Attorney).

————

Before Grendel, Kuhlke and Taylor, Administrative Trademark Judges.

Opinion by Grendel, Administrative Trademark Judge:

Applicant seeks registration on the Principal Register of the mark **CAESAR!CAESAR!** (in standard character form) for goods identified in the application as "salad dressings."[1]

---

[1] Serial No. 78494701, filed on October 5, 2004. The application is based on applicant's asserted bona fide intention to use the mark in commerce. Trademark Act Section 1(b), 15 U.S.C. §1051(b).

At issue in this appeal is the Trademark Examining Attorney's final refusal to register applicant's mark on the ground that it is merely descriptive of applicant's goods. Trademark Act Section 2(e)(1), 15 U.S.C. §1052(e)(1).

Applicant filed a main appeal brief, as did the Trademark Examining Attorney. After careful consideration of the evidence of record and the arguments of counsel, we affirm the Section 2(e)(1) refusal to register.

A term is deemed to be merely descriptive of goods or services, within the meaning of Trademark Act Section 2(e)(1), if it forthwith conveys an immediate idea of an ingredient, quality, characteristic, feature, function, purpose or use of the goods or services. *See, e.g., In re Gyulay,* 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987), and *In re Abcor Development Corp*., 588 F.2d 811, 200 USPQ 215, 217-18 (CCPA 1978). A term need not immediately convey an idea of each and every specific feature of the applicant's goods or services in order to be considered merely descriptive; it is enough that the term describes one significant attribute, function or property of the goods or services. *See In re H.U.D.D.L.E.,* 216 USPQ 358 (TTAB 1982); *In re MBAssociates*, 180 USPQ 338 (TTAB 1973).

Whether a term is merely descriptive is determined not in the abstract, but in relation to the goods or services for which registration is sought, the context in which it is being used on or in connection with those goods or services, and the possible significance that the term would have to the average purchaser of the goods or services because of the manner of its use.  That a term may have other meanings in different contexts is not controlling. *In re Bright-Crest, Ltd*., 204 USPQ 591, 593 (TTAB 1979). Moreover, it is settled that "[t]he question is not whether someone presented with only the mark could guess what the goods or services are.  Rather, the question is whether someone who knows what the goods or services are will understand the mark to convey information about them."  *In re Tower Tech Inc*., 64 USPQ2d 1314, 1316-17 (TTAB 2002). *See also In re Patent & Trademark Services Inc*., 49 USPQ2d 1537 (TTAB 1998); *In re Home Builders Association of Greenville*, 18 USPQ2d 1313 (TTAB 1990)*;* and *In re American Greetings Corporation*, 226 USPQ 365 (TTAB 1985).

Applying these principles in the present case, we find as follows.

First, the evidence of record clearly establishes that the word CAESAR is merely descriptive of applicant's "salad dressings."  Specifically, the Trademark Examining Attorney

3

has submitted dictionary evidence consisting of the following definition of "caesar salad": "A tossed salad of greens, anchovies, croutons, and grated cheese with a dressing of olive oil, lemon juice, and a raw or coddled egg." The American Heritage Dictionary of the English Language (4th ed. 2000).

The Trademark Examining Attorney also has submitted excerpts of articles obtained from the NEXIS database which demonstrate descriptive use of CAESAR in connection with salads and salad dressings. For example, an October 13, 2004 article in the San Francisco Chronicle has as its headline "Not all Caesar dressings are fit for an emperor," and includes the following text in the body of the article:

> Caesar salad dressing is incredibly popular. Only ranch dressing takes up more space on grocery shelves. And when it comes to the number of brands sold, Caesar clearly is emperor: We found 30.

A July 19, 2004 article in the Star Tribune (Minneapolis, MN) includes the following text:

> How did Caesar salad and Caesar dressing get their names? ... Most people agree that Caesar salad is named after Caesar Cardini, an Italian restaurateur in Tijuana, Mexico who created the salad in 1924. It caught on with California vacationers and, when Cardini moved to California, he started selling the dressing. By

4

the 1960's, Caesar salad was popular across the country.

A February 15, 2000 article in The Columbian (Vancouver, WA) has as its headline "Hail Caesar – The presentation has fallen, but Caesar still reigns as No. 1 salad." The text of the article includes the following:

> Then, as nearby diners peer discreetly, the spectacle: Caesar salad prepared with pomp and served with ceremony at the table. In the '50s and '60s, when it was such a production, Caesar salad was the anniversary, birthday or promotion salad of choice. In the '90s, Caesar became the salad of the moment and for the masses... The only restaurant I know that still does tableside Caesar locally is The London Grill in the Benson Hotel in Portland.

A July 15, 2005 article in the Chicago Sun-Times includes the following:

> Caesar salad – Redux. When I started writing this column (some 20 years ago) I took particular notice that my all-time favorite salad – Caesar – had fallen out of favor. It seemed to me that restaurants had abandoned this great salad, and for the life of me I could not understand why. Now the vaunted Caesar salad is now more popular than ever.

An April 14, 2005 article in The Times Union (Albany, NY) includes the following:

> Q. Is Caesar salad named after Julius Caesar?

> A. No. There are several stories about the origin of that dish's name; here's one. Sometime in the 1920's, Italian immigrant Caesar Cardini (some sources spell his name Gardini), founder of Caesar's Place in Tijuana, Mexico, was faced with a dilemma – lots of customers and dwindling food in the kitchen. He grabbed several ingredients along with romaine lettuce and whipped up a salad, which was well-received by the tourists. Today, Caesar salad is the most popular salad in restaurants nationwide.

A September 1, 1997 item from Copley News Service includes the following:

> Three out of four Americans eat a tossed salad at least every other day. The most popular? The classic Caesar. Caesar dressing surpasses blue cheese as the next big flavor.

The Trademark Examining Attorney also has made of record printouts from the Yahoo! Shopping website, which contain, under the search heading "Caesar Dressing," listings for Caesar dressings from numerous sellers. These include "Newman's Own Creamy Caesar Salad Dressing," "Ken's Steak House Caesar Salad Dressing," "Wish Bone Caesar Salad Dressing," and "Emeril's Caesar Salad Dressing."

Based on the above-quoted dictionary definition of "caesar salad," the NEXIS articles, and the Internet evidence, we find that CAESAR is merely descriptive of "salad dressings." CAESAR immediately describes and indeed is used as the name of a particular type of salad, i.e.,

the "Caesar salad," which we must presume (in the absence of any restrictions in applicant's identification of goods) to be a type of salad with which applicant's "salad dressings" may be used. The evidence also establishes that the word CAESAR immediately describes and names a particular type of salad dressing, called "Caesar dressing" or "Caesar salad dressing," which is used in connection with Caesar salads. This evidence establishes the mere descriptiveness of CAESAR as applied to salad dressings. *See, e.g., In re Central Sprinkler Co.*, 49 USPQ2d 1194 (TTAB 1998)(ATTIC generic for sprinklers installed primarily in attics); *In re Orleans Wines, Ltd.*, 196 USPQ 516 (TTAB 1977)(BREDSPRED merely descriptive of jams and jellies).

Having found, as a preliminary matter, that CAESAR is merely descriptive of applicant's salad dressings, we turn now to the ultimate issue in this case, i.e., whether applicant's mark CAESAR!CAESAR! is merely descriptive. We find that it is.

It is settled that a mark's mere repetition of a merely descriptive word does not negate the mere descriptiveness of the mark as a whole. *See In re Disc Jockeys, Inc.*, 23 USPQ2d 1715 (TTAB 1992), wherein the

7

Board found the mark DJDJ to be merely descriptive of disc jockey services. The Board explained:

> There is nothing in the composite which changes the meaning of the letters in any manner which would give them a different meaning. If one were to express the view that milk was "creamy creamy" or that a red bicycle was "red red" or that a razor was "sharp sharp," the repetition of the words "creamy," "red" and "sharp" would be understood as emphasis and the combinations of these words would not, simply because of their repetition, be rendered something more than descriptive.

*Id*. at 1716.

Likewise, the presence of the exclamation points in applicant's mark does not suffice to negate the mere descriptiveness of the mark. "Applicant has not cited nor have we found any case where it was held that a common punctuation mark, such as an exclamation point, was sufficient to elevate an otherwise merely descriptive term to the status of a registrable mark. We do not do so in this case." *In re Samuel Moore & Co*., 195 USPQ 237, 240 (TTAB 1977)(SUPERHOSE! merely descriptive of "hydraulic hose made of synthetic resinous material"). The Board's reasoning in that 1977 case has been consistently repeated in numerous cases over the years involving marks with exclamation points.

For example, in the case of *In re Promo Ink*, 78 USPQ2d 1301 (TTAB 2006), the Board found the mark PARTY AT A DISCOUNT! to be merely descriptive, specifically noting that "[t]his punctuation mark does not significantly change the commercial impression of the mark. It would simply emphasize the descriptive nature of the mark to prospective customers..."). *Id*. at 1305. Likewise, in *In re Brock Residence Inns, Inc*., 222 USPQ 920 (TTAB 1984), the Board found the mark FOR A DAY, A WEEK, A MONTH OR MORE! to be merely descriptive of hotel services, noting that "[t]he presence of the exclamation point at the end of the designation does not alter our opinion because it serves as well to emphasize the descriptive and informational significance of the designation as to indicate any other meaning." *Id*. at 922. *See also In re Wileswood, Inc*., 201 USPQ 400 (TTAB 1978)(AMERICA'S BEST POPCORN! and AMERICA'S FAVORITE POPCORN! found merely descriptive of unpopped popcorn). *Cf. In re Vanilla Gorilla, L.P*., 80 USPQ2d 1637 (TTAB 2006)(presence of punctuation mark (a hyphen) in the mark "3-0'S" does not negate mere descriptiveness of mark); *In re S.D. Fabrics, Inc*., 223 USPQ 54 (TTAB 1984)(presence of slash in the mark "designers/fabric" does not negate mere descriptiveness of mark).

In accordance with these authorities, we find in the present case that neither the mere repetition of the word CAESAR in applicant's mark, nor the presence of the exclamation points in the mark, nor both of these features combined, suffices to negate the mere descriptiveness of the mark as a whole as applied to salad dressings.

Applicant argues that its mark is not merely descriptive because one cannot determine what the goods are merely from viewing the mark. As noted above, however, that is not the test for mere descriptiveness. See *In re Tower Tech Inc.*, *supra*; *In re Patent & Trademark Services Inc.*, *supra*; *In re Home Builders Association of Greenville*, *supra*; and *In re American Greetings Corporation*, *supra*. Likewise, applicant's contention (at page 3 of its brief) that purchasers will view the mark not as merely describing the goods, but rather as "a summons or exaltation to a Caesar (which is well known to be a surname of a Roman emperor, a dictator, or a Roman statesman)," is not persuasive. The mere descriptiveness of the mark must be viewed in the context of the identified goods, not in the abstract or in relation to any other meaning the words in the mark might have. *See In re Bright-Crest, Ltd.*, *supra*.

Applicant has submitted two third-party Principal Register registrations of the mark PIZZA!PIZZA!, one for

10

"restaurant services" (Reg. No. 1439558, issued on May 12, 1987), and one for "pizza for consumption on or off the premises" (Reg. No. 1399730, issued on July 1, 1986).[2] PIZZA is disclaimed in both registrations. Applicant argues that the registered PIZZA!PIZZA! mark, which the Office apparently deemed to be suggestive rather than merely descriptive, is essentially identical in structure to applicant's CAESAR!CAESAR! mark, and that in the interest of consistency, applicant's mark should likewise be considered to be suggestive and thus registrable on the Principal Register. Our primary reviewing court, however, has rejected this argument:

> Needless to say, this court encourages the PTO to achieve a uniform standard for assessing registrability of marks. Nonetheless, the Board (and this court in its limited review) must assess each mark on the record of public perception submitted with the application. Accordingly, this court finds little persuasive value in the registrations that Nett Designs submitted to the examiner or in the list of registered marks Nett Designs attempted to submit to the Board.

---

[2] Printouts of these registrations were submitted for the first time with applicant's appeal brief. Although we normally would not consider this evidence because it is untimely, *see* Trademark Rule 2.142(d), 37 C.F.R. §142(d), we shall consider it in this case because the Trademark Examining Attorney, in her appeal brief, has not objected to this evidence and instead has presented arguments in rebuttal of the evidence. *See In re Urbano*, 51 USPQ2d 1776, 1778 n.4 (TTAB 1999); TBMP §1207.03.

*In re Nett Designs Inc.,* 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001). *See also In re Rodale Inc*., 80 USPQ2d 1696, 1700 (TTAB 2006)("Although consistency in examination is a goal of the Office, the decisions of previous Trademark Examining Attorneys are not binding on us, and we must decide each case based on the evidence presented in the record before us"); and *In re Finisair Corp*., 78 USPQ2d 1618, 1621 (TTAB 2006)("While uniform treatment is a goal, our task is to determine based on the record before us, whether applicant's mark is merely descriptive"). *See also In re Wilson*, 57 USPQ2d 1863 (TTAB 2001)(administrative law doctrine of "reasoned decisionmaking" does not require consistent treatment of applications to register marks; each application for registration must be considered on its own record and merits).[3]

Finally, applicant argues that the Office's refusal to register its CAESAR!CAESAR! mark, when the Office has previously allowed registration of the two PIZZA!PIZZA! marks, violates applicant's constitutional rights under the

---

[3] We note that the PIZZA!PIZZA! registrations applicant relies on were issued in 1986 and 1987, prior to the Board's 1992 precedential decision in *In re Disc Jockeys, Inc*. (the DJDJ case), in which the Board held that a mark's mere repetition of a merely descriptive term does not necessarily result in a mark which is not itself merely descriptive.

equal protection component of the Due Process Clause of the Fifth Amendment. Again, the Federal Circuit has specifically rejected this argument:

> Boulevard also asserts that the PTO has registered other sexually oriented marks and that it accordingly violates Boulevard's rights under the equal protection component of the Due Process Clause of the Fifth Amendment for the PTO to refuse to register the marks at issue in this case. ... In any event, the PTO must decide each application on its own merits, and decisions regarding other registrations do not bind either the agency or this court. *In re Nett Designs*, 236 F.3d 1339, 1342, [57 USPQ2d 1564] (Fed. Cir. 2001). Even if the PTO had previously allowed a mark similar to Boulevard's marks to be registered, that would not give Boulevard an equal protection right to have its mark registered unless the agency acted pursuant to some impermissible or arbitrary standard. *See In re Int'l Flavors & Fragrances*, 183 F.3d 1361, 1368 [51 USPQ2d 1513] (Fed. Cir. 1999). The fact that, whether because of administrative error or otherwise, some marks have been registered even though they may be in violation of the governing statutory standard does not mean that the agency must forgo applying that standard in all other cases. The TTAB's decision in this case therefore does not violate the constitutional principles that Boulevard invokes.

*In re Boulevard Entertainment Inc*., 334 F.3d 1336, 67 USPQ2d 1475, 1480 (Fed. Cir. 2003). Thus, applicant's constitutional argument in this case is unavailing.

In summary, and for the reasons discussed above, we find that applicant's mark CAESAR!CAESAR! is merely

13

descriptive of the "salad dressings" identified in the
application.


    Decision:  The Section 2(e)(1) refusal is affirmed.