# United States Court of Appeals for the Federal Circuit

2009-1100
(Serial Nos. 78/918,061 and 78/918,500)


IN RE SHINNECOCK SMOKE SHOP



Scott Michael Moore, Moore International Law Offices, of New York, New York, argued for appellant.

Thomas V. Shaw, Associate Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, argued for the Director of the United States Patent and Trademark Office. With him on the brief were Raymond T. Chen, Solicitor, and Shannon M. Hansen, Associate Solicitor. Of counsel was Christina J. Hieber, Associate Solicitor.

Appealed from:  United States Patent and Trademark Office
                Trademark Trial and Appeal Board

# United States Court of Appeals for the Federal Circuit

2009-1100
(Serial Nos. 78/918,061 and 78/918,500)


IN RE SHINNECOCK SMOKE SHOP



Appeal from the United States Patent and Trademark Office,
Trademark Trial and Appeal Board

_____

DECIDED:  July 1, 2009

_____


Before MAYER, CLEVENGER, and SCHALL, <u>Circuit Judges</u>.


CLEVENGER, <u>Circuit Judge</u>.


In June 2006, Jonathan K. Smith (Applicant), a U.S. citizen and member of the Shinnecock Indian Nation and sole proprietor of Shinnecock Smoke Shop, filed two trademark applications with the United States Patent and Trademark Office (USPTO), seeking to register the marks SHINNECOCK BRAND FULL FLAVOR and SHINNECOCK BRAND LIGHTS (Serial Nos. 78/918,061 and 78/918,500 respectively) for cigarettes.  Both marks also included the wording "MADE UNDER SOVEREIGN AUTHORITY."

The Trademark Examining Attorney (Examining Attorney) refused to register the proposed marks, citing Section 2(a) of the Trademark Act, 15 U.S.C. § 1052(a), which generally protects against registering marks that falsely suggest a connection to a non-

sponsoring entity. Applicant appealed to the Trademark Trial and Appeal Board (Board) which affirmed because it agreed that the marks falsely suggested a connection with the non-sponsoring Shinnecock Indian Nation. The Board also rejected Applicant's constitutional and treaty-based claims that pertained to his allegations of racial discrimination. Applicant timely appealed the Board's decision to this court. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(4)(B). We affirm.

I

"This court reviews the Board's legal conclusions de novo, and its factual findings for substantial evidence." In re Pacer Tech., 338 F.3d 1348, 1349 (Fed. Cir. 2003) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1983).

II

Title 15, section 1052(a) of the U.S. Code protects against marks that "falsely suggest a connection with persons, living or dead, institutions, beliefs, or national symbols." Applicant does not contest that the marks falsely suggest a connection with the Shinnecock Indian Nation. Instead, he challenges the Board's determination that the Shinnecock Indian Nation is a "person[ ], living or dead, [or] institution[ ]" under section 1052(a). We affirm the Board's conclusion that the Shinnecock Indian Nation is an "institution" and thus falls within section 1052(a)'s protection.

To construe a statute, we begin with its text and look to the words' plain meaning. Bazalo v. West, 150 F.3d 1380, 1382 (Fed. Cir. 1998). Here, the ordinary meaning of "institution" suggests the term is broad enough to include a self-governing Indian nation.

See Black's Law Dictionary 813, 1133 (8th ed. 2004) (defining "institution" as "[a]n established organization," and defining "organization" as a "body of persons . . . formed for a common purpose"). Our construction is also in line with Board precedent that has specifically included Indian tribes under section 1052(a)'s protection in the past, see In re White, 73 USPQ2d 1713, 1718 (T.T.A.B. 2004) (finding that "each federally recognized Apache tribe is necessarily either a juristic person or an institution"), and with the Board's general practice of construing the statute in question as broadly applicable, see In re Urbano, 51 USPQ2d 1776, 1779 (T.T.A.B. 1999) (finding that SYDNEY 2000, "the entire organization which comprises the Olympic Games, as a whole, qualifies as an 'institution' within the meaning of Section 2(a) of the Trademark Act"); In re N. Am. Free Trade Assoc., 43 USPQ2d 1282, 1285 (T.T.A.B. 1997) (same for the North American Free Trade Agreement). We agree with the Board's conclusion that the Shinnecock Indian Nation is an "institution" under section 1052(a).

A

Applicant offers little substantive support for his contention that the Shinnecock Indian Nation is not an "institution" under section 1052(a). Instead, Applicant contends that the "institution" issue was not raised below. According to Applicant, the Examining Attorney rejected the marks based on her conclusion that the Shinnecock Indian Nation falls under the statute's protection for "persons" and that the Board therefore should not have affirmed the decision based on its "institution" determination. We disagree.

While the Examining Attorney focused on characterizing the Shinnecock Indian Nation as a "juristic person," she apparently did so based on her understanding that the terms "person," "juristic person," and "institution" all have the same meaning under

section 1052(a). As evidence, the two sources that the Examining Attorney cited in explaining why the Shinnecock Indian Nation was subject to section 1052(a)'s false-suggestion protection both suggest such an approach. First, she cited section 1127 which provides,

> [t]he term "person" and any other word or term used to designate the applicant or other entitled to a benefit or privilege or rendered liable under the provisions of this Act includes a juristic person as well as a natural person. The term "juristic person" includes a firm, corporation, union, association, or other organization capable of suing and being sued in a court of law.

15 U.S.C. § 1127.

The Examining Attorney also cited In re White, a case in which the Board held that "there is nothing in the language of the statute to suggest that the meaning of 'persons' or 'institutions' is any broader or narrower for one of these grounds for refusal as opposed to another." 73 USPQ2d at 1717. The Examining Attorney's approach explains why, despite her repeated references to "juristic persons," she ultimately concluded that "the tribe is a person or institution for purposes of the Trademark Act."[1] It also explains why the Examining Attorney's brief before the Board cited two protected-institution cases, In re Urbano, 51 USPQ2d 1776, and In re N. Am. Free Trade Assoc., 43 USPQ2d 1282, and parenthetically noted that the Board's conclusion in each case was that the relevant organization qualified as an "institution."

We are also confident that Applicant understood the Examining Attorney's position and was aware that the "institution" issue was in play. Applicant's own brief to

---

[1] We offer no opinion as to whether the Examining Attorney's approach reflects a correct reading of "persons" or "institutions" under section 1052(a), a question beyond the scope of this appeal. We merely acknowledge the issues raised under her approach.

the Board explained that after the initial rejection, he "filed . . . a request for reconsideration, arguing, among other things, that the Tribe is not a person or institution within the meaning of Section 2(a)."  Applicant's concession betrays his contention that the "institution" issue was not raised below, and we conclude that the board did not err in affirming the rejection based on its " institution" determination.

B

As he did before the Board, Applicant also argues on appeal that the USPTO's refusal to register his marks, when the USPTO has granted supposedly similar marks also involving Indian tribe names to non-Indians, shows a pattern of racial discrimination in violation of the Due Process and Equal Protection clauses of the Fifth Amendment to the United States Constitution.  Applicant contends that this alleged racial discrimination also violates the United States' treaty obligations under the United Nations' International Convention on the Elimination of All Forms of Racial Discrimination (CERD).  The Board rejected Applicant's allegations, and we agree that they are meritless.

There was no due process violation here because Applicant "was provided a full opportunity to prosecute [his] applications and to appeal the examining attorney's final rejections to the Board."  In re Int'l Flavors & Fragrances Inc., 183 F.3d 1361, 1368 (Fed. Cir. 1999); see also Mathews v. Eldridge, 424 U.S. 319, 349 (1976) (explaining that "[a]ll that is necessary" to satisfy due process "is that the procedures be tailored, in light of the decision to be made, to 'the capacities and circumstances of those who are to be heard,' to insure that they are given a meaningful opportunity to present their case" (quoting Goldberg v. Kelly, 397 U.S. 254, 268–69 (1970))).  Applicant's allegations regarding similar marks are irrelevant because each application must be

considered on its own merits. See In re Boulevard Entm't, 334 F.3d 1336, 1343 (Fed. Cir. 2003). Even if all of the third-party registrations should have been refused registration under section 1052(a), such errors do not bind the USPTO to improperly register Applicant's marks. See id.

We likewise reject Applicant's equal-protection argument for several reasons. First, allegations of disparate treatment, even if accurate, do not diminish the Board's and Examining Attorney's legitimate, nondiscriminatory reasons for denying registration. Even if his allegations were accurate, the most Applicant could establish is that the USPTO should have rejected the other marks. It does not follow that the proper remedy for such mischief is to grant Applicant's marks in contravention of section 1052(a).

Further, Applicant's argument is founded on unsupported assumptions. Applicant assumes that, unlike him, the successful applicants were non-Indians and that this is the reason why his applications were rejected whereas theirs were not. However, as the Board noted, Applicant has made no showing that any of the other registered marks were registered without the consent of the named tribal entities. Further, Applicant ignores substantive differences—either in the marks or in their associated goods and services—that might have made the other registrations less suggestive of a false connection. We agree with the Board that "[i]t is entirely reasonable to assume that these registrations were issued not because the applicants therein were non-Indians, but because the elements of the Section 2(a) refusal were not or could not be proven by the Office." In re Shinnecock Smoke Shop, 2008 WL 4354159 at *6 (T.T.A.B. Sept. 10, 2008).

Applicant's reliance on CERD is likewise unavailing. In addition to Applicant's

failure to establish any racial discrimination as noted above, Applicant has no private right of action under CERD, which is not a self-executing treaty. See Johnson v. Quander, 370 F. Supp. 2d 79, 101–102 (D.D.C. 2005) (CERD provisions are not self-executing and, thus, do not authorize a private right of action), aff'd, 440 F.3d 489 (D.C. Cir. 2006), cert. denied, 549 U.S. 945 (2006).

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Trademark Trial and Appeal Board of the United States Patent and Trademark Office.

## AFFIRMED