THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
July 3, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Manwin/RK Collateral Trust*[1]

_____

Serial No. 85532448

_____

Alexa L. Lewis of Mitchell, Silberberg & Knupp, LLP for applicant Manwin/RK Collateral Trust.

Carolyn P. Cataldo, Trademark Examining Attorney, Law Office 103 (Michael Hamilton, Managing Attorney).

_____

Before Seeherman, Adlin, and Hightower, Administrative Trademark Judges.

Opinion by Hightower, Administrative Trademark Judge:

On February 2, 2012, a predecessor in interest to Manwin/RK Collateral Trust ("applicant") applied to register the mark MOMSBANGTEENS, in standard character form, for "entertainment services, namely, providing a web site featuring photographic, audio, video and prose presentations featuring adult-oriented subject

---

[1] RKIP, LLC originally filed the application and assigned it to RK Holdings, LLC on August 14, 2012 (assignment recorded in the Office Records at Reel/Frame Numbers 4848/0651). The application was then assigned by RK Holdings, LLC to Manwin IP S.A.R.L. on September 10, 2012 (Reel/Frame Numbers 4859/0072) and by Manwin IP S.A.R.L. to Manwin/RK Collateral Trust, also on September 10, 2012 (Reel/Frame Numbers 4880/0576).

matter" in International Class 41.[2]   Registration has been refused pursuant to Section 2(a) of the Trademark Act, 15 U.S.C. § 1052(a), on the ground that the mark consists of or comprises scandalous matter.

Applicant timely appealed.  Both applicant and the examining attorney filed appeal briefs, and applicant filed a reply brief.

<u>Analysis</u>

Section 2 of the Trademark Act provides in pertinent part that:

> No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—
>> (a) Consists of or comprises immoral, deceptive, or scandalous matter; . . .

The Patent and Trademark Office may prove that a mark is scandalous and refuse registration by establishing that the mark is "vulgar."[3]  *In re Fox*, 702 F.3d 633, 105 USPQ2d 1247, 1248 (Fed. Cir. 2012) (citing *In re Boulevard Entm't, Inc.*, 334 F.3d 1336, 67 USPQ2d 1475 (Fed. Cir. 2003) ("*Boulevard*")); *In re Star Belly Stitcher, Inc.*, 107 USPQ2d 2059, 2060 (TTAB 2013) ("*Star Belly Stitcher*") (stating that "the statutory language 'scandalous' has been considered to encompass matter that is 'vulgar,' defined as 'lacking in taste, indelicate, morally crude'") (quoting *In re*

---

[2] Application Serial Number 85532488, filed based on a bona fide intention to use the mark in commerce pursuant to Lanham Act Section 1(b), 15 U.S.C. § 1051(b).  An amendment alleging first use of the mark on January 31, 2012 and first use in commerce on February 29, 2012 was accepted on May 18, 2012.

[3] Although the terms "immoral" and "scandalous" are typically discussed as though basically synonymous, most refusals under the first clause of Section 2(a) have focused on whether marks comprise vulgar and therefore scandalous, as opposed to immoral, matter. *See In re Mavety Media Group Ltd.*, 33 F.3d 1367, 31 USPQ2d 1923, 1925 n.* (Fed. Cir. 1994); *In re McGinley*, 660 F.2d 481, 211 USPQ 668, 672 n.6 (CCPA 1981); *In re Lebanese Arak Corp.*, 94 USPQ2d 1215, 1216 (TTAB 2010).

*Runsdorf*, 171 USPQ 443, 444 (TTAB 1971)).  This demonstration must be made in the context of contemporary attitudes, in the context of the marketplace as applied to the services described in the application, and from the standpoint of not necessarily a majority, but a substantial composite of the general public.  *In re Fox*, 105 USPQ2d at 1248 (quoting *In re Mavety Media Group Ltd.*, 33 F.3d 1367, 31 USPQ2d 1923 (Fed. Cir. 1994) ("*Mavety Media*")).

Where the meaning of a mark is ambiguous, mere dictionary evidence of a possible vulgar meaning may be insufficient to establish the vulgarity of the mark. *In re Fox*, 105 USPQ2d at 1248.  But where it is clear from dictionary evidence that the mark as used by the applicant in connection with the services described in the application invokes a vulgar meaning to a substantial composite of the general public, the mark is unregistrable.  *Id.  See also Star Belly Stitcher*, 107 USPQ2d at 2060.

We begin by finding that, although applicant's mark MOMSBANGTEENS is presented without spaces, it would be viewed and verbalized as MOMS BANG TEENS, based on normal English pronunciation.  *See, e.g., In re ING Direct Bancorp*, 100 USPQ2d 1681, 1690 (TTAB 2011) (finding "Person2Person Payment" generic despite deletion of spaces); *Giersch v. Scripps Networks Inc.*, 90 USPQ2d 1020, 1025 (TTAB 2009) (finding that DESIGNED TO SELL does not create a distinct commercial impression from DESIGNED2SELL).

Record evidence establishes that "bang" is a slang term used as a synonym for sexual intercourse and often regarded as vulgar.  The examining attorney made

of record more than a dozen definitions of the transitive verb "bang" from online dictionaries and slang reference books, including the following:

1.  OFFENSIVE to have sex with someone[4]

2.  *Slang: Vulgar* . sexual intercourse.[5]

3.  *Vulgar Slang* To have sexual intercourse with.[6]

4.  to copulate [with] someone. (Usually objectionable.)[7]

5.  to have sex[8]

6.  slang for sexual intercourse[9]

7.  *vulgar slang* (of a man) have sexual intercourse with (a woman)[10]

8.  *Slang (vulgar).* to have sexual intercourse with.[11]

9.  have sexual intercourse with[12]

10. To have sexual intercourse; to fuck.  Considered vulgar and obscene. [vulgar slang][13]

11. have sexual intercourse with[14]

---

[4] May 17, 2012 Office action at 3, macmillandictionary.com.

[5] *Id.* at 6, dictionary.com.

[6] *Id.* at 7, education.yahoo.com/reference/dictionary.

[7] January 11, 2013 Office action at 7, RICHARD A. SPEARS, CONTEMPORARY AMERICAN SLANG 9 (2d ed. 2001).

[8] *Id.* at 20, TOM DALZELL & TERRY VICTOR, SEX SLANG 7 (2008).

[9] *Id.* at 28, urbandictionary.com (definition submitted 2004); *see also* August 8, 2013 Reconsideration letter at 32.

[10] August 8, 2013 Reconsideration letter at 8, oxforddictionaries.com.

[11] *Id.* at 11, dictionary.infoplease.com (from RANDOM HOUSE UNABRIDGED DICTIONARY (1997)).

[12] *Id.* 15, rhymezone.com.

[13] *Id.* at 18, freedictionary.org, "The Collaborative International Dictionary of English v.0.48."

[14] *Id.* at 24, mnemonicdictionary.com.

12.    *Vulgar Slang* To have sexual intercourse with.[15]

13.    *Vulgar Slang.* to have sexual intercourse with.[16]

It is plain from these definitions, obtained from both traditional and open-source online and printed dictionaries,[17] that the term "bang" is regarded as a slang term for the act of sexual intercourse. Based on the characterization of the word when used in this context as "vulgar," "offensive," "objectionable," or "obscene" in nine of the definitions of record, we find that it is considered to be vulgar by a substantial composite of the general public.[18] The mark MOMSBANGTEENS when used for an adult website would thus be understood as a vulgarity conveying the meaning of mothers having sexual intercourse with teenagers. This meaning is clear from applicant's use of the phrase in association with entertainment services "featuring adult-oriented subject matter," and from its specimens of use, which portray women represented as "moms" participating in sexual activity with pairs of "teens (18+)." *See Boulevard*, 67 USPQ2d at 1478 (finding the marks 1-800-JACK-OFF and JACK-

---

[15] *Id.* at 25, thefreedictionary.com (from THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000; updated 2009)).

[16] *Id.* at 27, the freedictionary.com (from RANDOM HOUSE KEMERMAN WEBSTER'S COLLEGE DICTIONARY (2010)).

[17] *See Star Belly Stitcher*, 107 USPQ2d at 2062 n.3 (discussing probative value of Urban Dictionary as a collaborative reference site).

[18] Also of record are two definitions characterizing "bang" as "taboo slang" meaning "to have sexual intercourse with." These definitions, however, are from collinsdictionary.com (using "English Worldwide" rather than "American English" definitions) and COLLINS ENGLISH DICTIONARY – COMPLETE AND UNABRIDGED (2003) at thefreedictionary.com. August 8, 2013 Reconsideration letter at 2-3, 26-27. The Collins Dictionary, although in the English language, is published in Glasgow, Scotland. Because it appears that this dictionary and website use definitions that are not necessarily the meaning of the words in the United States, these two definitions are of little or no probative value.

OFF in association with "entertainment in the nature of adult-oriented conversations by telephone" to be vulgar and offensive references to masturbation).

We disagree with applicant's contention that the Court of Appeals for the Federal Circuit has "eschewed" consideration of dictionary labels such as "vulgar," citing *Mavety Media*.[19]  In that 1994 case, the court specifically left open the question whether a standard dictionary definition and accompanying editorial designation of vulgarity conclusively demonstrates that a substantial composite of the general public considers a word scandalous, and thus whether registration may be refused solely on such dictionary evidence.  *Id.*, 31 USPQ2d at 1927-28.

Nine years later, the court answered that question in the affirmative:

> In a case such as this one, in which multiple dictionaries, including at least one standard dictionary, uniformly indicate that a word is vulgar, and the applicant's use of the word is clearly limited to the vulgar meaning of the word, we hold that the PTO can sustain its burden of showing that the mark comprises or consists of scandalous matter by reference to dictionary definitions alone.

*Boulevard*, 67 USPQ2d at 1478.  The court explained that "dictionary definitions represent an effort to distill the collective understanding of the community with respect to language and thus clearly constitute more than a reflection of the individual views of either the examining attorney or the dictionary editors."  *Id.*

In this case, the dictionary definitions of record alone are sufficient to satisfy the examining attorney's burden to make a prima facie showing that applicant's mark comprises vulgar matter and is therefore unregistrable as scandalous under

---

[19] Appeal Brief at 3.

Trademark Act Section 2(a). *See In re Fox*, 105 USPQ2d at 1248. We are not persuaded by applicant's argument that the term "bang" has "numerous alternative and equally applicable meanings,"[20] or by applicant's evidence regarding non-sexual uses of the term "bang," including in the titles of "The Big Bang Theory" TV show; "Bang!" card game with a "wild west" theme; 1968 movie "Chitty Chitty Bang Bang"; and 2005 movie "Kiss Kiss Bang Bang."[21] Although we agree that the dictionary entries of record show the word "bang" to have many meanings, there is no evidence that any such alternate, non-sexual meanings are pertinent in the context of applicant's mark and services. Moreover, it is well-established that

> there is no requirement in the statute that a mark's vulgar meaning must be the only relevant meaning—or even the most relevant meaning. Rather, as long as a "substantial composite of the general public" perceives the mark, in context, to have *a* vulgar meaning, the mark as a whole "consists of *or comprises*… scandalous matter."

*In re Fox*, 105 USPQ2d at 1250 (quoting 15 U.S.C. § 1052(a) (emphasis added) and *Boulevard*, 67 USPQ2d at 1477); *see also Boston Red Sox Baseball Club LP v. Sherman*, 88 USPQ2d 1581, 1588 (TTAB 2008) (finding SEX ROD vulgar despite non-vulgar definitions of "rod").

The record contains additional evidence demonstrating that applicant's mark, used in the context of its services, would invoke the vulgar meaning established by the dictionary evidence to a substantial composite of the general public. The examining attorney made of record several printouts from Internet websites in

---

[20] *Id.* at 4.

[21] December 10, 2012 response to Office action, Exhibit 1, at 10-49.

which formatives of the verb "bang" are used as a slang term for sexual intercourse.[22] These include, for example, an article from the dailycaller.com website titled "The eight creepiest teachers who allegedly banged (or tried to bang) their students this week."[23]

Applicant argues that "bang" is in mainstream, common usage as a slang term for sexual intercourse, and thus it is "simply inconceivable that it would be viewed as vulgar, scandalous or immoral by the majority of the public."[24] Applicant offers the following examples:

- "She Bangs," a 2000 song by the recording artist Ricky Martin which reached Number 12 on the Billboard Hot 100 chart;

- "Cook to Bang: The Lay Cook's Guide to Getting Laid," a 2010 book published by Macmillan (St. Martin's Griffin);

- "Let's Go Bang," the title and lead single of an album by the recording artist and actress Jennifer Love Hewitt, released in 1995 by Atlantic Records;

- "Bang," a men's cologne introduced in 2010 by fashion designer Marc Jacobs, accompanied by a provocative advertising campaign;

- "Mac Bangs Dennis' Mom," the title of a 2006 episode of the TV series "It's Always Sunny In Philadelphia"; and

---

[22] *See* Reconsideration letter at 35-76.

[23] *Id*. at 35.

[24] Reply Brief at 2.

- "Chelsea Chelsea Bang Bang," the title of a 2010 book by author, comedian, and talk-show personality Chelsea Handler.[25]

Applicant argues that: "The sheer volume of evidence of 'bang' being used in mainstream media shows that it is not an immoral, scandalous or vulgar term in 2014 even when used as a reference to sex."[26]

As previously noted, our determination is made from the standpoint of a substantial composite of the general public, not necessarily a majority. Applicant's evidence is insufficient to rebut the dictionary evidence submitted by the examining attorney and persuade us that the term "bang," when used as a slang reference to sexual intercourse, is no longer considered to be "lacking in taste, indelicate, or morally crude." While we recognize that social attitudes and sensitivities are ever-changing, we find that the numerous dictionary definitions of record – including Internet evidence from the Oxford Dictionaries and a 2009 update to the American Heritage Dictionary of the English Language – characterizing the transitive verb "bang" as vulgar are sufficiently contemporaneous with the examination of the application to reflect contemporary viewpoints. *See In re Luxuria, s.r.o.*, 100 USPQ2d 1146, 1150 (TTAB 2011).[27]

---

[25] December 10, 2012 response to Office action, Exhibit 2, at 50-98.

[26] Reply Brief at 3.

[27] The oldest reference source of record for which a year is provided dates to 1997. We also note that both applicant and the examining attorney discussed the unpublished opinion *In re Betty Bangs, LLC*, Serial No. 85386222, 2013 WL 5407261 (TTAB July 9, 2013), in which the Board affirmed a refusal to register the mark I BANGED BETTY for "bathing suits for men; men's and women's jackets, coats, trousers, vests; men's underwear" pursuant to Trademark Act Section 2(a). Decisions of the TTAB designated as not precedential are not binding on the Board. *See* Trademark Trial and Appeal Board Manual of Procedure (TBMP) §§ 101.03, 1203.02(f) (3d ed. rev. 2 June 2013). However, we observe that the *Betty*

Applicant's argument that we should consider the views only of the subset of the public who consume its services – "an adult audience seeking adult content with an adult vocabulary"[28] – also is misplaced. Previous opinions affirming refusals under Section 2(a) of marks used with adult-oriented goods or services instruct that our evaluation must consider the general public's view as to whether a mark is vulgar, and the two cases applicant cites in support of this argument are not to the contrary. In *Mavety Media*, the Federal Circuit explicitly considered how a substantial composite of the general public would view the mark BLACK TAIL when used in the context of an adult entertainment magazine; the court did not limit its analysis to the views of consumers of such magazines. *See* 31 USPQ2d at 1928. The other case, *In re Hershey*, 6 USPQ2d 1470 (TTAB 1988), concerned T-shirts, not adult-oriented goods, and thus does not support applicant's position.

Similarly unpersuasive are ten third-party registrations applicant made of record.[29] We do not view the other marks as making a commercial impression comparably scandalous to MOMSBANGTEENS because they do not refer to sexual intercourse with "teens," a term which includes children under the age of consent. More importantly, we must decide each case on its own merits and are not bound by

---

*Bangs* opinion issued less than one year before this case came before us for consideration, and the evidence and outcome in that case are consistent with our decision here.

[28] Appeal Brief at 8; *see also id.* at 10 ("The relevant marketplace, limited by the description of services, is essentially the red light district of the internet.").

[29] These registrations are for BANG YOU LATER (No. 3885808), BANG (No. 4213824), BATTLE BANG (No. 3965466), THE BANG (No. 3158753), BANGBUS (No. 2810145), BANG BUS (No. 3310838), BANG BROS NETWORK (No. 3751866), BANG BROS WORLD WIDE (No. 3751869), BANGO (No. 3966924), and BANGBROS (2923488). December 10, 2012 Response to Office action, Exhibit 3, at 99-107; July 11, 2013 Request for Reconsideration, Exhibit A, 5-11.

the allowance of prior registrations, even if they have some characteristics similar to the application. *In re Nett Designs Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001). "The fact that, whether because of administrative error or otherwise, some marks have been registered even though they may be in violation of the governing statutory standard does not mean that the agency must forgo applying that standard in all other cases." *Boulevard*, 67 USPQ2d at 1480. *See also In re Shinnecock Smoke Shop*, 571 F.3d 1171, 91 USPQ2d 1218, 1221 (Fed. Cir. 2009) ("Even if all of the third-party registrations should have been refused registration under section 1052(a), such errors do not bind the USPTO to improperly register Applicant's marks."); *Star Belly Stitcher*, 107 USPQ2d at 2064 (stating that "although consistent treatment under the Trademark Act is an administrative goal, the existence of third-party registrations that may be equally immoral or scandalous, or more immoral or scandalous, is not justification for the registration of another immoral or scandalous mark").

Finally, applicant's arguments and evidence that the general consuming public accepts the concept of older women having sexual intercourse with younger men are irrelevant.[30] Our decision is based on the vulgarity of the specific term BANG as used in applicant's mark MOMSBANGTEENS in association with its services.

---

[30] *See, e.g.*, Reply Brief at 5: "Even if Applicant's mark is deemed to carry a sexual connotation, the general consuming public does not find the concept of a woman having sexual intercourse with an eighteen or nineteen year old man to be offensive or vulgar . . . ." *See also* December 10, 2012 response to Office action, Exhibits 4-7, at 108-36.

Of course, our decision is limited to the registration of the mark and does not concern the continued use of applicant's mark. Because applicant selected a mark that is disqualified from registration, however, it cannot "call upon the resources of the federal government in order to enforce that mark" – at least not through federal registration. *In re Fox*, 105 USPQ2d at 1252. *See also id.* at 1248 ("This court and its predecessor have long assumed that the prohibition [on registration of immoral or scandalous marks] 'is not an attempt to legislate morality, but, rather, a judgment by the Congress that [scandalous] marks not occupy the time, services, and use of funds of the federal government.'") (quoting *Mavety Media*, 31 USPQ2d at 1928).

*Decision*: Because applicant's mark comprises scandalous matter, the refusal of registration is affirmed.