THIS DECISION IS A
PRECEDENT OF THE TTAB

Mailed: January 18, 2012

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**

_____

In re City of Houston

_____

Serial No. 77660948
Filed February 1, 2009

_____

Mark G. Chretien and Ben D. Tobor of Greenberg Traurig LLP for applicant.

Sally Shih, Examining Attorney, Law Office 106, Mary I. Sparrow, Managing Attorney.

_____

**Before Kuhlke, Cataldo, and Mermelstein, Administrative Trademark Judges.**

**Opinion by Mermelstein, Administrative Trademark Judge:**

The City of Houston, Texas seeks registration on the Principal Register of the following mark:



for "municipal services, namely, promoting trade, commerce, economic development and tourism; city administrative services, namely, business administration and management of

municipality services," in International Class 35; and

"municipal services, namely, providing public utilities

services," in International Class 39.[1]

Registration has been finally refused on the ground

that the mark "includes a governmental insignia of the City

of Houston."  Trademark Act § 2(b), 15 U.S.C. § 1052(b).

Applicant appealed, and the appeal has been fully briefed.

This appeal raises an issue of first impression:  Does

Trademark Act § 2(b) bar registration when the applicant is

a government entity seeking to register as a service mark

its own flag, coat of arms, or other insignia?  We conclude

that it does, and we accordingly affirm the refusal to

register.[2]

## I.    Preliminary Issues

Applicant attached several exhibits to its opening

---

[1] The application is based on an allegation of first use and use in commerce as of February 1, 2009, for both classes.  Applicant has disclaimed the exclusive right to use "CITY OF HOUSTON TEXAS" apart from the mark as shown.  The application contains the following description of the mark:

- The mark consists of a circular seal having a rope pattern contour with a design of a plow, a locomotive and a five pointed Texas star, and the wording "CITY OF HOUSTON TEXAS" within the seal and a fleur de lis on each side of the term "TEXAS".

[2] We also decide today In re Gov't of the Dist. of Columbia, __ USPQ2d __, App. No. 77643857 (TTAB Jan. 18, 2012), involving similar legal issues.

2

brief on appeal,[3] and in its brief listed thirteen third-party registrations in support of its argument.  *See* App. Br. at 10.  Copies of the thirteen listed registrations were attached to applicant's reply brief.  In her brief on appeal, the examining attorney objected to consideration of both the listed third-party registrations and the other evidence attached to applicant's brief, on the ground that neither were timely, and that the list of registrations was insufficient to make them of record.  Ex. App. Br. at 6.

The examining attorney's objection to the exhibits to applicant's opening brief is overruled.  All of this material was submitted during examination, in connection with applicant's June 18, 2010, response to an Office action.  While there was no need to attach additional copies to applicant's appeal brief, *Life Zone Inc. v. Middleman Group Inc*., 87 USPQ2d 1953, 1955 (TTAB 2008) (evidence attached to briefs will almost always be either untimely or duplicative, and in either event should not be filed), striking this material would be pointless as it is already properly of record.

---

[3] The exhibits to applicant's brief consisted of a copy of Trademark Act § 2 (Exh. A); a copy of the Trademark Act of 1905, § 5 (Exh. B); two pages of what appear to be errata pertaining to a law journal article, *Flags and Seals of Texas*, 33 S. Tex. L. Rev. 215, pp. vi-vii (1992) (Exh. C); and an excerpt from a book, SCOT M. GUENTER, THE AMERICAN FLAG, 1777-1924, 132-153, 228-233 (1990) (Exh. D).

With respect to the list of thirteen third-party registrations set out in applicant's opening brief and the copies of those registrations attached to applicant's reply brief, we note that those same registrations were listed[4] in applicant's June 18, 2010, response to an Office action. In her final refusal, the examining attorney neither discussed applicant's listed registrations, nor did she inform applicant that a mere list was not a proper means to introduce registrations into the record.[5]

---

[4] Only the registration number and literal elements of the marks appear in applicant's lists; any design elements in the marks were not set out in either applicant's response to the Office action or in applicant's opening brief, nor is other information such as the names of the registrants provided.

[5] It is well-established that in order to make third-party registrations properly of record, "applicant should submit copies of the registrations themselves, or the electronic equivalent thereof" from the USPTO's electronic databases, now known as TARR or TESS. *In re Broadway Chicken Inc.*, 38 USPQ2d 1559, 1560 n.6 (TTAB 1996) (citing *In re Smith and Mehaffey*, 31 USPQ2d 1531 (TTAB 1994)). Such submissions should be made prior to appeal or, if after appeal, pursuant to a remand of the matter to the examining attorney for further examination. Trademark Rule 2.142(d).

Records of registrations can change over time. The requirement for submission of copies of cited third-party registrations provides a definitive record for the USPTO to review, both during examination and upon appeal to the Board, and provides clear notice to interested parties and the public of the record upon which an administrative decision regarding registrability was made. Similarly, the USPTO must provide a complete record of a proceeding for any reviewing court. *See* 35 U.S.C. § 143 ("[T]he Director shall transmit to the United States Court of Appeals for the Federal Circuit a certified list of the documents comprising the record in the Patent and Trademark Office. The court may request that the Director forward the original or certified copies of such documents during pendency of the appeal."); Trademark Rule 2.191. Submission of copies of

4

We find that the examining attorney's failure to advise applicant of the insufficiency of the list of registrations when it was proffered during examination constituted a waiver of any objection to consideration of that list. Accordingly, we will consider the same list of registrations set out in applicant's opening brief "for whatever limited probative value such evidence may have." *In re Broyhill Furniture Indus. Inc*., 60 USPQ2d 1511, 1513, n.3 (TTAB 2001).

We reach a different conclusion with respect to the copies of applicant's thirteen listed third-party registrations attached to its reply brief. "The record in the application should be complete prior to the filing of an appeal. The ... Board will ordinarily not consider additional evidence filed with the Board by the appellant or by the examiner after the appeal is filed." Trademark Rule 2.142(d). This is especially true with respect to evidence submitted for the first time with a reply brief, to which the examining attorney may not respond. *In re Zanova Inc*., 59 USPQ2d 1300, 1302 (TTAB 2001) ("By attempting to introduce evidence with its reply brief, applicant has effectively shielded this material from

cited registrations enables the USPTO to fulfill its responsibility to a reviewing court in the event of an appeal.

5

review and response by the Examining Attorney."). If applicant wished to submit proper evidence of its third-party registrations after filing its appeal, it should have requested a remand for that purpose, which – if granted[6] – would have given the examining attorney an opportunity to examine the new evidence and respond to it appropriately. Trademark Rule 2.142(d). Applicant having failed to do so, we find the evidence submitted with applicant's reply brief "manifestly untimely," and we have not considered it.[7] *In*

---

[6] We do not suggest that such a request would have been granted. A request for remand will only be granted upon a showing of good cause. *See generally*, TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE ("TBMP"), § 1207.02 (3d ed. 2011) (and cases cited therein). Whether good cause has been demonstrated will depend, *inter alia*, on the point in the appeal at which the request is made and the reason for the delay in submitting the evidence.

[7] Applicant argues that the evidence attached to its reply brief should be considered because the examining attorney failed to object to its list of registrations submitted during examination. Reply Br. at 3-4 (citing *Broyhill*, 60 USPQ2d at 1513 n.3). Applicant misreads *Broyhill*. That case did not permit submission of proper evidence of the listed registrations with Broyhill's brief, let alone its reply brief. In *Broyhill*, "the sole evidence cited by applicant ... [was] a list of five third-party registrations." 60 USPQ2d at 1513 (emphasis added). Upon the examining attorney's objection in her brief to "such evidence," *i.e.*, the list, we held the objection waived, *id.* at n.3, and considered "applicant's evidence regarding ... third-party registrations ... for whatever limited probative value such evidence may have." *Id*. The waiver in *Broyhill* was thus limited to the evidence which was improperly submitted during examination but not objected to – Broyhill's list of registrations. *See also In re Dos Padres Inc.*, 49 USPQ2d 1860, 1861 n.2 (TTAB 1998).

In this case, the examining attorney's failure to object during examination constituted a waiver of objection only to the evidence which was improperly submitted during examination, namely, the list of registrations. The absence of an objection to the list was not a waiver of any objection to the future untimely submission of the registrations with applicant's brief

re *Petroglyph Games Inc*., 91 USPQ2d 1332, 1334 (TTAB 2009).

## II. Interpretation of Trademark Act § 2(b)

### A. Statutory Provisions

The relevant statutory language provides as follows:

> No trademark by which the goods of the applicant
> may be distinguished from the goods of others
> shall be refused registration on the principal
> register on account of its nature unless it—
>
> ...
> Consists of or comprises the flag or coat of arms
> or other insignia of the United States, or of any
> State or municipality, or of any foreign
> nation,[8] or any simulation thereof.

Trademark Act § 2(b); 15 U.S.C. § 1052(b).

The quoted provision is substantially similar to a

provision of the earlier Trademark Act of 1905, which read

as follows:

> [N]o mark by which the goods of the owner of the
> mark may be distinguished from other goods of the
> same class shall be refused registration as a
> trade-mark on account of the nature of such mark
> unless such mark
>
> ...
> Consists of or comprises the flag or coat of arms
> or other insignia of the United States or any
> simulation thereof, or of any State or

---

or reply brief.  Our consideration of these third-party registrations is thus limited to the information which applicant listed at page 8 of its June 18, 2010, Office action response (and which is repeated at page 10 of its opening brief).

[8] For ease of reference, we refer generally to "the flag or coat of arms or other insignia of the United States or of any State or municipality, or of any foreign nation" (and to their equivalent in the 1905 statute and the Paris Convention) as governmental or official insignia.

7

municipality or of any foreign nation....

Trademark Act of 1905, § 5, ch. 592 § 5, 33 Stat. 724 (1905) (repealed 1946).

### B.    Construction

As explained at greater length in *District of Columbia*,

> [w]e find the quoted language of the current statute – and that of its predecessor – to be plain and clear on its face.  Reversing the negative syntax of Section 2, we read the quoted subsection to bar registration of any mark which is or includes the "coat of arms or other insignia of ... any ... municipality."  While the text does not resolve all definitional issues (*i.e.*, what constitutes "other insignia" or a "simulation"), those questions are not at issue in this case.  Further, we find the statute to be uniform in its applicability.  The text of the statute offers no exception to the prohibition on registration, even when a governmental entity applies to register its own official insignia.

Slip op. at 12-13 (footnote omitted).

Applicant argues that "Trademark Act Section 2(b) is silent as to whether or not countries, states, or municipalities may register their own insignia."  App. Br. at 6.  We disagree.  While it is true that Section 2(b) does not explicitly answer applicant's narrow question, it clearly provides an answer because it requires refusal of registration when the applied-for mark "consists or comprises the flag or coat of arms or other insignia of ... any ... municipality."  The statute is not "silent" as to

whether a municipality may register its own official insignia – it provides that *all* such marks are to be refused. The specific statement that applicant finds missing in the statutory language is simply unnecessary to its interpretation, because the prohibition on the registration of *all* official insignia resolves the question of whether *some* official insignia may be registered. Under any theory of interpretation, a categorical statement is not incomplete or unclear merely because it does not explicitly set out every element or subset of the category, and the language of Trademark Act § 2(b) is no exception. There is absolutely nothing in the statute itself which hints of a different result.

Accordingly, we find that Trademark Act § 2(b) on its face bars registration of all official insignia, regardless of the identity of the applicant.

## III. Applicant's Arguments

Notwithstanding what appears to be the clear meaning of the statutory provision at issue, applicant raises three points in arguing for reversal of the refusal to register:

> (i)  the statutory language should be construed to allow a city to register its own official seal to identify municipal services that the city provides to its citizens under the seal;

> (ii)  Applicant is seeking registration for its city seal for use in connection with services

> provided by the Applicant, and not as an "emblem of national authority"; and
>
> (iii) at least thirteen ... other cities have been allowed to register their city seals, with at least one ... of these registrations issuing after Applicant's mark had been rejected.

App. Br. at 3.

## A.   Origin of Trademark Act § 2(b)

Noting that what is now Trademark Act § 2(b) first appeared in substantially similar form as § 5 of the Trademark Act of 1905, applicant hypothesizes that the provision "was enacted to prevent desecration of the flag, coat of arms or related symbols by halting the registration of commercial trademarks that contained representations of those marks."  App. Br. at 7.  Applicant claims that "[t]he original statute was <u>not</u> intended to prevent the relevant states, countries, or municipalities from protecting their own insignia.  Instead, the purpose was the exact opposite, to protect the states, countries, or municipalities from having their insignia misappropriated or used for improper commercial purposes by private individuals or entities."  App. Br. at 8.

While we are unable to conclusively verify applicant's theory as to the origin of Trademark Act § 2(b),[9] it makes

---

[9] As authority for its hypothesis, applicant cites a footnote in a law review article, *Flags and Seals of Texas*, 33 S. Tex. L.

little difference.  Even if we accept the premise that

Trademark Act § 2(b) was intended to prevent commercial

exploitation of the flag (and other official indicia), it

does not necessarily follow that Congress intended that

governments should be allowed to register their own

official insignia.  Rather – assuming applicant's premise –

it would appear that Congress instead opted to prevent

---

Rev. 215 (1992), which in turn cites a book, Scot M. Guenter, The American Flag, 1777-1924, 138-39 (1990), for the proposition that "[t]he 1905 trademark statute was the earliest federal flag-protection law.  It was enacted to prevent desecration of the flag, coat of arms, and related symbols by halting the registration of commercial trademarks that contained representations of those marks."  33 S. Tex. L. Rev. at 238 n. 73.5; *see* App. Br. at 7-8.

However, the excerpts from Guenter's book which applicant has submitted do not entirely support applicant's theory of the genesis of Trademark Act § 2(b).  Guenter describes the rise of patriotic fervor in the waning years of the nineteenth century and the rise of what he refers to as the "cult of the flag," fanned by nationalistic movements and the formation of hereditary societies and other patriotic organizations.  Many members of such organizations were dismayed by the commercial exploitation of the U.S. flag, and lobbied for both state and federal laws against such use.  Nonetheless, while these groups enjoyed some legislative success at the state level, and some success in courts and other tribunals, *see Dist. of Columbia*, slip op. n. 14, Guenter notes that they were rebuffed in their efforts to have their desired federal legislation passed.  Indeed, in the excerpt submitted by applicant, Guenter makes no mention at all of the Trademark Act of 1905 or the provision which ultimately became Section 2(b) of the current Act.

Thus, while Guenter's "cult of the flag" was quite likely supportive of the ultimate adoption of § 5 of the Trademark Act of 1905, applicant's authorities provide no direct support for the notion that Trademark Act § 2(b) originated as a flag desecration statute.  We note that the applicant in *District of Columbia* presents an alternative history of Section 2(b).  *See id.* slip op. at 17-24.  Ultimately, we find it unnecessary to definitively determine the origins of Trademark Act § 2(b) because it makes no difference; under either theory we would reach the same result.

commercial exploitation of such insignia by a complete ban on registration for any use of such indicia in commerce. That is the plain meaning of the legislation which was enacted.

Trademark law is fundamentally about the use of marks in commerce. If the motivation behind Section 5 of the Trademark Act of 1905 was indeed concern over commercial exploitation of the flag and other official insignia, it would have been logical to ban all registrations of official insignia, even if the commercial use involved is by the government itself.

While applicant might be of the opinion that Congress employed a larger hammer than necessary to hit that particular nail, we are not in the business of rewriting statutes to more narrowly effect what we suppose might have been Congress' intention. We must presume, of course, that Congress knew what it was doing when it drafted Section 5 of the Trademark Act of 1905 and later Section 2(b) of the 1946 Act. *United States v. Goldenberg*, 168 U.S. 95, 102-03 (1897). And if that statutory language is clear – as we find it to be in this case – there is a "strong presumption that the plain language of the statute[] expresses congressional intent [which] is rebutted only in rare and

12

exceptional circumstances."[10]  *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 11 (2008).

In this case, the statutory language at issue clearly indicates that all marks which "[c]onsist[] of or comprise[] the flag or coat of arms or other insignia of the United States, or of any State or municipality, or of any foreign nation, or any simulation thereof" are to be refused registration.  The statute does not provide for any exception to the rule, although one could easily have been written had it been intended to apply.  We accordingly presume that Congress intended the prohibition on registration of official insignia to apply universally, without regard to the identity of the applicant.

**B.   Applicant's Use of its Official Seal**

Applicant emphasizes that it "is not seeking to register its City Seal as an 'emblem of authority.' Instead, it is seeking to register the City Seal in connection with specific municipal services that it provides to its citizens via its various City departments."

---

[10] We note that applicant has cited no discussion in legislative hearings, speeches, committee reports, or the like of this provision in the legislative history of either Section 5 of the 1905 Act or the current Trademark Act § 2(b), and we have not been able to find any.  Whatever may be argued about the role of legislative history in interpreting statutory language, there is nothing in the history of this legislation which clearly suggests an interpretation of Trademark Act § 2(b) contrary to its clear language.

App. Br. at 9. Applicant argues that "insignia which are 'merely used to identify a service or facility of the Government' do not fall within the general prohibitions of the statute." *Id.* (citing *In re United States Dep't of the Interior*, 142 USPQ 506 (TTAB 1964)).

Applicant seeks registration of its official seal for use in connection with "municipal services, namely, promoting trade, commerce, economic development and tourism; city administrative services, namely, business administration and management of municipality services," in International Class 35; and "municipal services, namely, providing public utilities services," in International Class 39. The application thus identifies a number of activities in which governments typically engage.[11] However, applicant misreads *Department of the Interior* to the extent it finds support in that case for the contention that the nature of the goods and services identified in the application is a factor in determining whether Trademark Act § 2(b) prohibits registration of official insignia. Neither the statute nor *Department of the Interior* makes such a distinction.

---

[11] The services recited in this case differ in this regard from the goods identified in the application at issue in *District of Columbia*. In that case, the identified goods appear to be in the nature of commercial merchandise. *Dist. of Columbia*, slip op. at 2-3.

*In re U.S. Department of the Interior* involved an application to register the following mark used by the Department in connection with

> (1) Operation and maintenance of recreational and educational facilities in connection with parks, monuments, camp sites, trails, museums and similar institutions, and (2) Making available to the public publications and other informational material in connection with the activities of (1).



Registration was refused under Trademark Act § 2(b). On appeal, "[t]he question for determination ... [was] whether the insignia of the 'National Park Service,' here sought to be registered, falls within the category of 'or other insignia' prohibited by Section 2(b)." *Id*., 142 USPQ at 507. After analyzing the text of the statute, the Board construed Trademark Act § 2(b) to prohibit registration of

> insignia of the same general class as "the flag or coats of arms" of the United States. Since both the flag and coat or [sic] arms are emblems of national authority it seems evident that other insignia of national authority such as the Great Seal of the United States, the Presidential Seal, and seals of government departments would be equally prohibited registration under Section 2(b).

*Id.*

The Board found that the applied-for mark was not similar in kind to emblems of governmental authority such as the flag or Great Seal of the United States. The proper analysis thus focuses on the nature of the mark at issue.

Nonetheless, applicant seizes on the final sentence of the case, which directly follows the language quoted above: "On the other hand, it appears equally evident that department insignia which are merely used to identify a service or facility of the Government are not insignia of national authority and that they therefore do not fall within the general prohibitions of this section of the Statute." *Id*. Applicant contends that "it is seeking to register the City Seal in connection with specific municipal services that it provides to its citizens. ... These permitted uses do not fall within the narrowly defined prohibitions of the statute set forth in the case law." App. Br. at 9.

We do not construe the final sentence in *Department of the Interior* as indicating that the applicability of Trademark Act § 2(b) to official insignia depends on the goods or services recited in the application. The statute says no such thing, and the panel in *Department of the Interior* did not even hint at any authority or rationale

16

for such a rule.  Indeed, until this last sentence, the decision did not in any way discuss the relevance of the goods or services to the determination of whether registration is prohibited under Trademark Act § 2(b).  The decision focused instead on the mark itself and whether it was akin to "the flag or coat of arms ... of the United States."

It is thus the nature and status of the applied-for *mark* that invokes the prohibition of § 2(b).  We understand the final sentence of *Department of the Interior* to simply recognize that sometimes resort to consideration of the use of the applied-for mark by the relevant government entity may be necessary in determining whether the mark is in fact "the flag or coat of arms or other insignia" of that government.  Although *Department of the Interior* makes clear that the statute prohibits registration of "emblems of ... authority" on a par with the Great Seal of the United States, the question of *whether* an applied-for trademark meets that definition may not always be determined simply by looking at the mark itself.  Thus if the evidence demonstrates that the relevant authority *uses* the applied-for mark as an official insignia, it should be accorded such status under the Trademark Act.  However, if the applied-for mark is never used as an emblem of

17

authority, but instead is merely used to identify some service or program provided by a government agency, the mark would not fall within the meaning of "other insignia" and should not be refused under Trademark Act § 2(b).[12] But however the conclusion is reached, once it is determined that the applied-for mark is the official insignia of "the United States, ... any state or municipality, or of any foreign nation," its registration is prohibited, regardless of the specific goods or services for which registration is sought.

In this case, we are constrained to determine that the City of Houston's applied-for mark is such an official insignia, barred from registration under Section 2(b). Applicant clearly admitted throughout examination and in its briefs that the subject of its application is the city's official seal. *E.g.,* Application (Feb. 1, 2009) ("The mark consists of the official seal of the City of Houston, Texas."); Req. for Recon. at 2 (June 18, 2010) ("Applicant's mark is the City Seal ... for the City of Houston, Texas"); App. Br. at 3 ("Applicant is seeking

---

[12] In *Department of the Interior*, the mark was actually used in connection with the provision of recreational and educational services in public parks, and not as something akin to an official seal of the government. The Board took pains to emphasize that nothing in Trademark Act § 2(b) should be read as a general prohibition on the registration of *any* trademarks by governments. *Dep't of the Interior*, 142 USPQ at 506-07.

registration for its city seal"). Therefore, in determining whether the subject application is for a mark described in Section 2(b), we have no need to examine applicant's actual use of its seal, or a statute or other evidence of whether applicant adopted the applied-for mark as an official "emblem of authority."[13]

Finally, we think it obvious that whether the mark is an official insignia is not determined (or limited) by the goods or services for which application is sought. Thus, the fact that applicant seeks registration for use of its official seal in connection with certain identified services is not particularly probative of whether the seal is, in fact, a "flag or coat of arms or other insignia" under the statute. Once the status of the mark as an official insignia is established, it does not matter what else the mark may be used for, and Trademark Act § 2(b) cannot be avoided simply by limiting the application to certain goods or services.[14] Trademark Act § 2(b) requires

---

[13] We further note that there is no dispute that applicant is a "municipality," within the meaning of Trademark Act § 2(b). A "municipality" is "[a] legally incorporated or duly authorized association of inhabitants of limited area for local governmental or other public purposes." BLACK'S LAW DICTIONARY, 918 (5th ed. 1979), of which we take judicial notice.

[14] A contrary rule would permit precisely the type of harm that applicant argues Trademark Act § 2(b) was intended to prevent, namely, commercialization of the government's emblems of authority. By way of example, under the statute the Great Seal of the United States is not registrable as a trademark, even by

refusal of registration when *the mark* "consists of or comprises the flag or coat of arms or other insignia of the United States, or of any State or municipality, or of any foreign nation," regardless of the particular goods or services for which registration is sought.

### C. Allegedly Inconsistent Registrations

Finally, we consider applicant's argument that registration should be allowed because "at least thirteen ... other cities have been allowed to register their city seals."

Applicant submitted a list of thirteen registrations in support of this argument. Although we will consider this evidence, it has very little probative value. As noted, applicant's list consists only of marks and registration numbers. This evidence is incomplete, at best, as it sets out only the wording in the listed marks, without displaying the owner of the registration, any design elements, disclaimers, or other possibly relevant data. More importantly, however, there is no evidence in this record that the listed registrations are, in fact, the official seals of the cities mentioned in the marks.

---

the United States government, and it makes no difference at all whether registration is sought for the services of "managing a national government" or "operation of recreational facilities in parks" or – as in the parallel case – "cuff links, mugs, and sweat pants."

Except to the extent prohibited by Trademark Act § 2(b), cities are clearly permitted to apply for and own trademarks, as are states and national governments. *Dep't of the Interior*, 142 USPQ at 506 ("the granting of trademark and service mark registrations to state and governmental agencies does not appear to be contrary to the established policy of the Patent [and Trademark] Office"). We cannot presume simply from the fact that the marks include words such as CITY OF FULLERTON CALIFORNIA, Reg. No. 2,877,383, or CITY OF MIAMISBURG OHIO'S STAR CITY, Reg. No. 2,522,124, that the listed marks are in fact the official emblems of authority of the named cities.

But even if we were to assume that all of the listed registrations are inconsistent with the examining attorney's refusal in this case, reversal is not required. As noted at the outset, the issue we decide today is one of first impression with the Board. As applicant recognizes, App. Br. at 11, it is well-settled that we are not bound by the decisions of examining attorneys, nor do applicants have a substantive right to consistency. *In re Nett Designs Inc*., 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001); *see also In re Rodale Inc*., 80 USPQ2d 1696, 1700 (TTAB 2006) ("Although consistency in examination is a goal of the Office, the decisions of previous Trademark

21

Examining Attorneys are not binding on us, and we must decide each case based on the evidence presented in the record before us"); *In re Finisair Corp.*, 78 USPQ2d 1618, 1621 (TTAB 2006); *In re Wilson*, 57 USPQ2d 1863 (TTAB 2001) (administrative law doctrine of "reasoned decisionmaking" does not require consistent treatment of applications to register marks; each application for registration must be considered on its own record and merits).

Nonetheless, applicant attempts to limit this principle to "issues involving subjective determinations."

> [T]he present case is not one that hinges on a subjective determination of, for example, likelihood of confusion, where previous decisions with different facts may not be directly applicable and reliance on the findings of these previous decisions would not be warranted. Instead, this case deals with the non-subjective, straight-forward application of a statute, which should be applied uniformly to <u>all</u> applicants.

App. Br. at 11.

We agree, of course, that a legal determination such as whether Trademark Act § 2(b) applies to applicant's attempt to register its own official seal should be applied consistently.  However, our obligation is to make such a decision correctly, and we may not abdicate that responsibility to examining attorneys who made determinations in earlier applications.  To the contrary, it is the Board which must correct examining attorneys if

22

they have applied an incorrect legal standard in a case that comes before us.[15]  The third-party registrations noted by applicant here are not at issue, and in any event, there is far too little information on this record to determine anything relevant about their registration.[16]  But as the Court of Appeals for the Federal Circuit noted, "[e]ven if all of the third-party registrations should have been refused registration ..., such errors do not bind the USPTO to improperly register Applicant's marks."  *In re Shinnecock Smoke Shop*, 571 F.2d 1171, 91 USPQ2d 1218, 1221 (Fed. Cir. 2009) (*citing In re Boulevard Entm't*, 334 F.3d 1336, 67 USPQ2d 1475, 1480 (Fed. Cir. 2003)).

**IV. Conclusion**

We have carefully considered all of applicant's evidence and arguments in favor of registration. Nonetheless, for the reasons we have discussed, we conclude that Trademark Act § 2(b) prohibits without exception the registration of marks which "[c]onsist[] of or comprise[] the flag or coat of arms or other insignia of the United States, or of any State or municipality, or of any foreign

---

[15] Indeed, we expect that a clear decision on this legal issue will promote the goal of consistency.  As noted, we have not heretofore had the occasion to rule on this issue.

[16] Only the mark in the subject application is before us today. Nothing in this decision should be read as an opinion on the registrability of any other mark or the validity of any registration noted by applicant.

nation." We further conclude that applicant's official seal as depicted in the subject application is such a mark, and that registration is therefore barred by statute.

Applicant argues that Congress did not intend such a result, although it provides no clear indication that Congress intended anything other than what the statute clearly provides. Because we find the language of Trademark Act § 2(b) clear on the question presented, we have neither the authority nor a basis to deviate from its terms. Applicant and others in its position are free, of course, to pursue a legislative solution, but we are without authority to write an exception into the statute.

*Decision:* The refusal to register is AFFIRMED.