This Opinion Is a
Precedent of the TTAB

Hearing: November 12, 2013                                   Mailed: July 7, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Datapipe, Inc.*

_____

Serial No. 85173828

_____

Glenn Spencer Bacal and David M. Andersen of Bacal Law Group PC,
for Datapipe, Inc.

Sung Hyun In, Trademark Examining Attorney, Law Office 103,
Michael Hamilton, Managing Attorney.

_____

Before Bucher, Taylor and Adlin,
Administrative Trademark Judges.

Opinion by Bucher, Administrative Trademark Judge:

Datapipe, Inc. ("Applicant") seeks registration on the Principal Register of the

term **YOUR CLOUD** (*in standard character format*) for the following services:

> electronic data storage services, namely, storing electronic
> data at data centers; computer services in the nature of
> providing an integrated suite of data and computer
> related services, namely, electronic data storage in
> International Class 39; and

> computer services in the nature of providing an integrated
> suite of data and computer related services, namely,
> providing computer security consulting in the area of data
> storage, online security and information security
> vulnerability; providing a secure and safe environment for
> the information technology systems of others, namely,

providing computer co-location services in the nature of providing facilities for the location of computer servers and equipment of others; computer services in the nature of monitoring and managing computer network systems; network security services in the nature of computer network security services, namely, restricting access to and by computer networks to and of undesired web sites, media and individuals and facilities; security management services, namely, computer consultation in the field of computer security; disaster recovery services, namely, computer disaster recovery planning and recovery of computer data; server management services, namely, hosting the web sites of others on a computer server for a global computer network; data backup services, namely, back-up services for computer hard drive data; web site hosting services; computer services, namely, remote and on-site management of the information technology cloud computing systems of others; technical support services, namely, remote and on-site infrastructure management services for monitoring, administration and management of public and private cloud computing and application systems; consulting services in the field of cloud computing, namely, consulting in connection with cloud computing applications and networks; technical consulting services in the fields of public and private cloud computing, namely, consulting services in the field of design, selection, implementation and use of computer hardware and software systems for others; technical support services, namely, monitoring of network systems, servers and web and database applications and notification of related events and alerts; providing on-demand resource allocation for computer systems including access to virtual servers and virtual machines; hosting the software and other computer applications of others on a virtual private and public server; technical support services for hardware, software and operating systems in the nature of monitoring, diagnosing and problem resolution related to software applications; computer services, namely, remote and on-site management of electronic messaging systems of others including troubleshooting, optimizing, patching, hardening, storage management, mailbox movement, installation and configuration and migration

of electronic messages and message systems, such as email, in International Class 42.[1]

Trademark Examining Attorney Kaelie E. Kung initially refused registration of Applicant's mark under Trademark Act Section 2(e)(1), 15 U.S.C. § 1052(e)(1), which prohibits registration of any matter which "when used on or in connection with the goods of the Applicant is merely descriptive … of them. …" Six months after this refusal was made Final, Applicant requested reconsideration by the Trademark Examining Attorney and appealed the refusal to this Board. After the Trademark Examining Attorney denied the request for reconsideration, the appeal was resumed and Applicant timely filed its appeal brief. The Trademark Examining Attorney filed a brief and Applicant filed a reply brief. After briefing was completed, the Office transferred this appeal from Ms. Kung to newly-assigned Trademark Examining Attorney Sung Hyun In.

On July 31, 2013, relying on what Applicant has referred to as "a provision in a nonpublic, internal examination guide that apparently directs Trademark Examining Attorneys to treat the word MY differently than the word YOUR on the issue of mere descriptiveness," Applicant asked the Board to consider new evidence, specifically, the Office's refusal of, or failure to refuse, various other applied-for marks including the terms MY or YOUR; or alternatively, to remand the application for "careful consideration of the error of having" the referenced "examination guide" "produce an unanticipated rejection of Applicant's YOUR CLOUD" mark.

---

[1] Application Serial No. 85173828 was filed on November 10, 2010, based upon Applicant's allegation of a *bona fide* intention to use the asserted mark in commerce under Section 1(b) of the Act.

Accordingly, in an order dated August 2, 2013, the Board postponed the oral hearing then scheduled for August 8, 2013. On September 20, 2013, Judge Quinn denied Applicant's alternative requests to have the Board consider the additional evidence on appeal or to remand to the Trademark Examining Attorney.

On September 26, 2013, Applicant asked the Board to reconsider its denial of Applicant's July motion, supplying as support "Examination Tip, Office of Trademark Quality Review and Training, October 2004, No. 1, a two-page document Applicant had earlier requested from the United States Patent and Trademark Office.[2] On November 5, 2013, Judge Quinn denied Applicant's request for reconsideration. On November 12, 2013, a hearing on the merits of the statutory refusal was held before this panel of the Board in which Applicant's counsel appeared via videoconference.

A term is merely descriptive if it "immediately conveys knowledge of a quality, feature, function, or characteristic of the goods or services with which it is used." *In re Bayer Aktiengesellschaft,* 488 F.3d 960, 82 USPQ2d 1828 (Fed. Cir. 2007) (citing *In re Gyulay,* 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987)), and *In re Abcor Development,* 588 F.2d 811, 200 USPQ 215, 217-18 (CCPA 1978). A term need not immediately convey an idea of each and every specific feature of the Applicant's goods or services in order to be considered merely descriptive; rather, it is sufficient

---

[2] We note that this informal training document has none of the hallmarks of an Examination Guide. Moreover, while on occasion decisions of the courts or this Board will necessitate the subsequent issuance by the Trademark Examining Operation of a new Examination Guide, the Board makes its determination of the registrability of an applied-for mark based upon the Trademark Act and relevant case law. While we frequently review the issued guidance on procedural examination issues in the course of drafting a decision, the Board is not bound by Examination Guides, the TMEP, etc.

that the term describes one significant attribute, function or property of the goods or services. *In re Chamber of Commerce of the United States of America*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012); *In re H.U.D.D.L.E.*, 216 USPQ 358 (TTAB 1982); and *In re MBAssociates*, 180 USPQ 338 (TTAB 1973). Whether a mark is descriptive cannot be determined in the abstract. *Bayer*, 82 USPQ2d 1831. Rather, descriptiveness must be evaluated "in relation to the particular goods for which registration is sought, the context in which it is being used, and the possible significance that the term would have to the average purchaser of the goods because of the manner of its use or intended use." *Id., and In re Bright-Crest, Ltd.*, 204 USPQ 591, 593 (TTAB 1979). It is settled that "[t]he question is not whether someone presented with only the mark could guess what the goods or services are. Rather, the question is whether someone who knows what the goods or services are will understand the mark to convey information about them." *DuoProSS Meditech Corp. v. Inviro Medical Devices, Ltd.*, 695 F.3d 1247, 103 USPQ2d 1753, 1757 (Fed. Cir. 2012) (citing *In re Tower Tech Inc.*, 64 USPQ2d 1314, 1316-17 (TTAB 2002)).

When two or more merely descriptive terms are combined, the determination of whether the composite also has a merely descriptive significance turns on whether the combination of terms evokes a new and unique commercial impression. If each component retains its merely descriptive significance in relation to the goods or services, the combination results in a composite that is itself merely descriptive. *See e.g., In re Oppedahl & Larson LLP*, 373 F.3d 1171, 71 USPQ2d 1370 (Fed. Cir. 2004) (**PATENTS.COM** merely descriptive of computer software for managing a

database of records, that could include patents, for tracking the status of the records by means of the Internet); *In re Energy Products of Idaho,* 13 USPQ2d 2049, 2052 (TTAB 1989) (The phrase **THE WASTE-TO-ENERGY COMPANY** is merely descriptive for engineering consulting services in developing, designing, manufacturing, installing, starting up and operating low pollution fluid bed equipment); and *In re Putman Publishing Co.,* 39 USPQ2d 2021 (TTAB 1996) (**FOOD & BEVERAGE ONLINE** merely descriptive of news and information services in the food processing industry).

To affirm the Trademark Examining Attorney's mere descriptiveness refusal in both classes, we must find that **YOUR CLOUD** immediately conveys information about one feature or characteristic of at least one of the services within each of the two classes of services identified in the application. *See In re Stereotaxis Inc.,* 429 F.3d 1039, 77 USPQ2d 1087, 1089 (Fed. Cir. 2005) ("[R]egistration should be refused if the mark is descriptive of any of the goods for which registration is sought.") (quoting *In re Richardson Ink Co.,* 511 F.2d 559, 185 USPQ 46 (CCPA 1975)).

### *"Cloud"*

The Trademark Examining Attorney contends that the term "Cloud" is the common descriptive name for a type of computer network in which data or computer programs are stored and accessed remotely, rather than on the user's own computer. Online technology dictionaries placed into the record by the Examining Attorney define "cloud," "the cloud," and "cloud computing" as follows:



**cloud**
**a.k.a. the cloud**

Originally this was a term for the unpredictable part of a network that data travels through on its way to its final destination. In a packet-switched network, the physical path on which the data packet travels can vary from one packet to the next. In a circuit-switched network, the specific circuit can vary from one connection to the next.

It later morphed into "the cloud" - which refers to a style of computing in which dynamic, scalable and virtual resources are provided over the Internet. Known as cloud computing, it refers to services that provide common business applications online, which are accessed from a Web browser, while the software and data are stored on the servers.

See also : in the cloud, cloud computing

[3]



**cloud →**
**cloud computing**
*<architecture>* A loosely defined term for any system providing access via the Internet to processing power, storage, software or other computing services, often via a web browser. Typically these services will be rented from an external company that hosts and manages them.        [4]



| Cloud |
|---|

A cloud is any switched network that provides service while hiding its functional details from its users. A user simply connects to the edge of the cloud, and trusts the network to handle the details of moving a signal or data across to its destination. The PSTN and the Internet are two well-known examples of cloud networks.        [5]

Applicant obviously is correct in pointing out that general dictionaries show that the most well-known definitions of the word "cloud" occur in a meteorological context (e.g., particles of condensed vapor suspended in the atmosphere) or literary forms analogized thereto (e.g., "gathering clouds of war").

---

[3] netlingo.com/; Office action of Dec. 29, 2010.

[4] foldoc.org/; Office action of December 29, 2010.

[5] westnetinc.com/; Office action of July 18, 2011.

However, as noted, we do not make this determination in the abstract. Rather, we look to the identified services and manner of Applicant's use, or intended use, of the term. From Applicant's own website we see the importance of "cloud" and "cloud computing," managed hosting, compliance and "cloud security" to the gamut of Applicant's cloud services, along with a strong focus on "you," the customer:

### Cloud Computing

**For Datapipe, cloud computing is not just about the power — it's about how you use it.**

Datapipe combines extensive Managed Services experience with Amazon Web Services elastic infrastructure, and our own Stratosphere™ virtualization offerings to develop industry-leading enterprise cloud computing solutions. When professionally engineered and optimized, cloud computing delivers unprecedented power. Our customized cloud solutions focus on your unique needs to leverage the flexibility, cost savings and processing power of the cloud when you need it, where you need it, how you need it - while freeing up valuable personnel and resources. [highlighting supplied] [6]

A number of third-party websites supplied by the Trademark Examining Attorney demonstrate the role that Applicant, Datapipe, plays as a provider of data center infrastructure (" … storing electronic data at data centers" (International Class 39) and managed services in the fields of public and private cloud computing (" … technical support services, namely, … management services for monitoring, administration and management of public and private cloud computing" in International Class 42) (highlighting below supplied):

---

[6] datapipe.com/, as captured by the Trademark Examining Attorney on July 18, 2011.



7



8

The record suggests Amazon is one of the leading players in cloud computing, and the Amazon Web Services (AWS) website provides information about its elastic cloud computing backed by one of its cloud-providers, i.e., Applicant's (Datapipe's) managed services (e.g., "computer services in the nature of monitoring and managing computer network systems ... and ... technical consulting services in the

---

[7] netcraft.com/; Office action of July 18, 2011.

[8] myhostnews.com/; Office action of July 18, 2011.

fields of public and private cloud computing, namely, consulting services in the field of design, …"):



AWS Solution Providers

---

Datapipe

**Contact:**
Ed Laczynski, VP Cloud Strategy
edl@datapipe.com
Bill Dolan, VP Business Development
bdolan@datapipe.com
1-877-773-3306
10 Exchange Place
12th Floor
Jersey City, NJ 07302
http://www.datapipe.com/cloud



Datapipe Managed Cloud is an all-inclusive suite of managed services featuring:
- Architecture and design
- Forklifting
- 24×7×365 technician-based monitoring and management
- Patching and OS maintenance
- Change management, and more.

Datapipe offers customers a simple billing model that eases the transition to and scaling of cloud computing programs. Datapipe Managed Cloud also includes a suite of Cloud Accelerators for enhanced cloud infrastructure design. The modules include a Server Access Manager for LDAP, an Email Relay, a Global Load Balancer for multi-site DNS based load balancing, and a Web Application Accelerator for dynamic content caching.

**What customers are saying about Datapipe Managed Cloud for AWS**
"By migrating to the Datapipe Managed Cloud, we were able to implement a hosting solution that offered tremendous value without sacrificing performance or security," explained Bob Gibson, CEO of VillasCaribe, a top-rated vacation rental company. "As a new Datapipe client, I must admit, it took me a bit to understand the dynamics of the cloud computing environment, but we could not be happier. Our migration was certainly complex, but with the support of Datapipe's team they were able to move us to our new environment seamlessly."
For more information visit http://www.datapipe.com/cloud

**About Datapipe**
Datapipe is a leading global provider of managed services and data center infrastructure for IT and cloud computing. As one of the originators of the Managed Services Provider model, clients trust Datapipe to manage and secure mission-critical systems. Our Services Datapipe provides services to a range of vertical industries, including financial services, healthcare and pharmaceutical, manufacturing and distribution, state and federal governments, publishing, media and communications, business services, public sector, technology and software.

**Global Reach**
Datapipe's facilities are strategically located in the United States, the United Kingdom, and China.[9]

Finally, Applicant has included a primer on "cloud computing" by supplying for the record an extended entry from Wikipedia. *See* Applicant's request for reconsideration of January 18, 2012, Exhibit A at 6-19. Given this explanation of

---

[9] aws.amazon.com/ as accessed by the Trademark Examining Attorney on July 18, 2011.

cloud computing, the record shows that Applicant clearly benefits from the fact that its cloud storage services provide customers with a viable alternative to capital expenditures for procuring new hardware – namely, providing, instead, infinitely scalable capacity at steadily decreasing prices.

### *"Your"*

As to the leading word "Your," in addition to its common usage as a second-person, possessive pronoun, the Trademark Examining Attorney points to the dictionary entry supporting the connotation of the word "your" as "used with little or no meaning almost as an equivalent to the definite article *the* <*your* typical teenager>."[10]

In response, in support of its arguments, Applicant points to the following examples of marks registered on the Principal Register that begin with "Your" where there are no disclaimers and no indication the Office had ever raised the bar of mere descriptiveness during prosecution of the involved applications:[11]

| | |
|---|---|
| **YOUR CHURCH** | for "guidebooks regarding church management, administration and operation" in International Class 16;[12] |
| **YOUR VIEW** | for "automated employee survey and exit interview services" |

---

[10] MERRIAM-WEBSTER, online at merriam-webster.com/ as captured by the Trademark Examining Attorney on February 17, 2012, and attached to the Denial of Request for Reconsideration.

[11] We note that some of the third-party registrations referenced by applicant are no longer live registrations: Registration No. 0919016 (**YOUR BODY**) expired; Registration No. 3046760 (**YOUR SPACE**) cancelled § 8; Registration No. 3151087 (**Your Concierge**) cancelled § 8; Registration No. 2909245 (**YOUR BLUEPRINT**) cancelled § 8; Registration No. 2915833 (*your ride*) cancelled § 8; Registration No. 2120703 (**YOUR MONEY**) cancelled § 8. We have long held that cancelled or expired registrations are not evidence of anything except that they issued. *See* TBMP § 704.03(b)(1)(A) (June 2013) and cases cited therein.

[12] Registration No. 1720203 issued on September 29, 1992; second renewal.

| | |
|---|---|
| | for "portrait photography services, namely, photographing people in exchange for permission to utilize the images in the photos for display, publication, and other uses in any medium or form" in International Class 42;[14] |
| **YOUR CHEF** | for "prepared foods, namely, pasta and sauce mixes, rice and sauce mixes, seasoning mixes, spice blends, soup mixes, and cake muffin and brownie mixes, sold dried in packets" in International Class 30;[15] |
| **YOUR ASSISTANT** | for "computer software that optimizes the efficiency and interactivity of telephones, instant messaging, contact management software, point to point and point to multi-point audio and video conferencing, presence detection, file sharing and knowledge management; and computer telephony software" in International Class 9;[16] |
| **YOUR TUBE** | for "condoms" in International Class 10;[17] |
| **YOUR PATIENT** | for "electronic publications, namely, newsletters featuring information of interest to physicians and other healthcare professionals recorded on computer media" in International Class 9; "publications, namely, magazines in the field of information of interest to physicians and other healthcare professionals" in International Class 16;[18] |
| **YOUR LEGACY** | for "downloadable electronic publications, namely, magazines featuring banking, credit, money management, investing, investments and financial matters" in International Class 9; "magazines featuring banking, credit, money management, investing, investments and financial matters" in International Class 16; "providing magazines featuring banking, credit, money management, investing, investments and financial matters via email" in International Class 41;[19] |

The first row begins: in International Class 35;[13]

---

[13] Registration No. 2265037 issued on July 27, 1999; renewed.

[14] Registration No. 2662591 issued on December 17, 2002; renewed.

[15] Registration No. 2673079 issued on January 7, 2003; renewed.

[16] Registration No. 2941531 issued on April 19, 2005; Section 8 affidavit accepted and Section 15 affidavit acknowledged.

[17] Registration No. 3437009 issued on May 27, 2008.

[18] Registration No. 3529324 issued on November 4, 2008.

| | |
|---|---|
| ♡YOUR MOVE | for "transportation and storage of goods" in International Class 39;[20] |
| **YOUR NUTS!** | for "spiced prepared baked pecan nuts" in International Class 29;[21] and |
| **YOUR MINDER** | for "countdown timer(s) and alarms to remind a person to take or give a medication(s) and/or to remind a person to do a daily routine(s)" in International Class 9.[22] |

Although the United States Patent and Trademark Office strives for consistency, each application must be examined on its own merits. Neither the Trademark Examining Attorney nor the Board is bound to approve for registration an Applicant's mark based solely upon the registration of other assertedly similar marks for other goods or services having unique evidentiary records. *In re Boulevard Entm't Inc.*, 334 F.3d 1336, 67 USPQ2d 1475, 1480 (Fed. Cir. 2003) ("the PTO must decide each application on its own merits, and decisions regarding other registrations do not bind either the agency or this court," citing *In re Nett Designs*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001)); *see also In re International Taste Inc.*, 53 USPQ2d 1604, 1606 (TTAB 2000).

Moreover, we are not privy to the evidence and argument adduced in these other registrations. For example, in the context of composite "**YOUR** + any noun" marks, the stark immediacy with which the word "cloud" conveys information about Applicant's services is noticeably absent in most of the third-party registrations on which Applicant relies, e.g., in the relationship between the word "Tube" as applied

---

[19] Registration No. 3554876 issued on December 30, 2008.

[20] Registration No. 3626230 issued on May 26, 2009.

[21] Registration No. 3640030 issued on June 16, 2009.

[22] Registration No. 3839905 issued on August 31, 2010.

to condoms, the word "Assistant" in the context of telecommunications software, or even the word "Chef" in the context of seasoning mixes, etc. Additionally, some of the other marks have a double entendre, e.g., "Your Nuts!" for pecans (also meaning "You are Nuts!") unlike Applicant's asserted mark.

Arguably, the Office's collective determinations when examining the above third-party marks may have been similar to the Board decision reversing the refusal under Section 2(e)(1) to register the mark **YourDVD** for DVD players and other consumer electronic devices. Although Applicant returned several times to the reasoning of this earlier Board decision during oral hearing,[23] because it is a non-precedential opinion, we will not engage in a detailed discussion of it herein. We merely note that given the fine line between suggestive marks and descriptive terms, and in light of the several factual determinations reviewed in the opinion, the panel in the **YourDVD** case had doubt about where to place that term on the continuum of distinctiveness, and under such circumstances, the Board must resolve any doubt in favor of finding the term or phrase suggestive rather than descriptive.

Furthermore, Applicant argues that the Office's refusal herein is inconsistent with its approval of Applicant's application to register **THIS IS YOUR CLOUD**[24] and **YOUR CLOUD MANAGED.**[25] However, *slogans* such as Applicant's two recently-

---

[23] *In re TCL GoVideo*, Serial No. 78395320 (TTAB, August 2, 2006)

[24] Registration No. 4115833 issued to Datapipe, Inc. on March 20, 2012, covering services in International Classes 39 and 42 substantially identical to those of the instant application.

[25] Registration No. 4115861 issued to Datapipe, Inc. on March 20, 2012, covering services in International Classes 39 and 42 substantially identical to those of the instant application.

registered marks as well as the third-party mark above, "[Love or Heart] Your Move," adopted by a moving company, will be treated differently from the similarly-constructed, two-word descriptors (e.g., "Your Cloud"). *See generally* TMEP § 1213.05(b)(i).

Finally, the several titles listed above that are registered for publications are distinguishable from the case at bar given the propensity of publishers to choose titles that convey some idea of the contents of the publications. *See H. Marvin Ginn Corp. v. Int'l Assn. of Fire Chiefs*, 782 F.2d 987, 228 USPQ 528, 530-31 (Fed. Cir. 1986). As a result of this tendency to reveal content, most reported cases grappling with the distinctiveness of titles of publications focus on the line between descriptiveness and genericness, not the line between descriptiveness and suggestiveness. *See Technical Publishing Co. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136, 222 USPQ 839, 841 (7th Cir. 1984).

Applicant also points to the following examples of marks registered on the Principal Register that begin with "Your" where there are disclaimers of the descriptive term following "Your," but no indication that the Office found the entire mark to be merely descriptive:[26]

---

No claim is made to the exclusive right to use the word "Cloud" apart from the mark as shown. According to the reasoning of the Trademark Examining Attorney handling the involved application, the additional wording and unconventional word order in this previously registered mark may have been viewed as requiring mental steps to determine an intended meaning for that composite mark; and the term "Your Cloud" may not have been viewed as a separable term within that mark, and hence would not be subject to a disclaimer requirement.

[26] Some of the third-party registrations referenced by applicant are no longer live registrations: Registration No. 2413880 (*YOUR REGISTRY* and design ) cancelled § 8; Registration No. 2963690 (**YOUR CONCIERGE**) cancelled § 8; Registration No. 3061134

| | |
|---|---|
| **YOUR WAREHOUSE** | for "wholesale distribution to retailers featuring home and business security products manufactured by third parties" in International Class 35;[27] |
| **Your e-Bill** | for "electronic utility bill presentment and payment services, namely electronic process and transmission of utility bill payment data offered to utility bill customers" in International Class 36;[28] |
| **Your Office** | for "rental of office machines and equipment; business management; business management consulting; business consultation; personnel management consulting; advertising agencies" in International Class 35; "office rental services" in International Class 36;[29] |
| **Your Dinners** | for "food preparation services whereby consumers assemble prepared ingredients to make meals" in International Class 43;[30] |
| **YOUR CLASSICS** | for "broadcast services, namely, distribution of television programming via television, cable, satellite, global computer network, audio and video media, wireless communications and wired communications" in International Class 38;[31] |
|  | for "resume preparation; advertising through all public communication means; employment consulting services" in International Class 35;[32] |

(**YOUR DIET**) cancelled § 8; Registration No. 3105620 (*Your Home* and design 🏠) cancelled § 8; Registration No. 3135523 (**YOUR PREEMIE**) cancelled § 8; and Registration No. 3187771 (**YOUR HOME**) cancelled § 8. As noted earlier, cancelled or expired registrations are not evidence of anything except that they issued.

[27] Registration No. 2305712 issued on January 4, 2000; renewed. No claim is made to the exclusive right to use the word "Warehouse" apart from the mark as shown.

[28] Registration No. 2997649 issued on September 20, 2005; Section 8 affidavit accepted and Section 15 affidavit acknowledged. No claim is made to the exclusive right to use the term "e-Bill" apart from the mark as shown.

[29] Registration No. 3162149 issued on October 24, 2006; Section 8 affidavit accepted and Section 15 affidavit acknowledged. No claim is made to the exclusive right to use the word "Office" apart from the mark as shown.

[30] Registration No. 3289062 issued on September 4, 2007. No claim is made to the exclusive right to use the word "Dinners" apart from the mark as shown.

[31] Registration No. 3541132 issued on December 2, 2008. No claim is made to the exclusive right to use the word "Classics" apart from the mark as shown.

[32] Registration No. 3638956 issued on June 16, 2009. No claim is made to the exclusive right to use the word "résumé" apart from the mark as shown.

| | |
|---|---|
| **Your College** | for "admission consulting services, namely, consulting in the field of college admissions, specifically, college selection, completing admissions applications, and preparation for college admission interviews; college consulting services, namely, assisting students in finding colleges and universities and completing the application process" in International Class 41;[33] |
|  | for "admission consulting services, namely, consulting in the field of college admissions, specifically, college selection, completing admissions applications, and preparation for college admission interviews; college consulting services, namely, assisting students in finding colleges and universities and completing the application process" in International Class 41;[34] |

Several of these composite marks include special design features that change the determination about whether the mark as a whole is merely descriptive. Also, the standard character marks above which lead with the second-person, possessive pronoun (the word "Your") do not have the immediate descriptiveness that is, by contrast, apparent in the context of Applicant's proposed mark, given the personalization of services Applicant provides. Applicant's own website uses "you" and "your" four times in a single sentence. Additionally, the involved term points specifically to "your" (the customer's) customized, unique, secured, backed-up, encrypted piece of the "cloud." When enterprises need cloud computing platforms and infrastructure, this personalized formulation is quite believable. By contrast, retailers of security products are unlikely to feel the same ownership of a brick-and-

---

[33] Registration No. 3642807 issued on June 23, 2009. No claim is made to the exclusive right to use the word "College" apart from the mark as shown.

[34] Registration No. 3642809 issued on June 23, 2009. No claim is made to the exclusive right to use the word "College" apart from the mark as shown.

mortar warehouse, for example, when their wholesale distributor adopts as a service mark, **YOUR WAREHOUSE**.

Based upon the evidence of record and the definitions of "your" and "cloud," the designation "Your Cloud" does not evoke a new and unique commercial impression. Rather, the words "Your" and "Cloud" each retain their merely descriptive significance in relation to the recited services. No imagination, thought or perception is required to reach a conclusion as to the nature of the involved services. We find no double entendres or incongruities. In this case, because Applicant is a provider of managed services and data center infrastructure in the fields of public and private cloud computing, Applicant's applied-for term is merely descriptive. We find that Applicant has failed to offer evidence to rebut the Trademark Examining Attorney's *prima facie* showing of descriptiveness. We experience no hiccups, and feel no need to take any mental leaps. Hence, the evidence of record leaves no doubt in the minds of this panel that **YOUR CLOUD** is merely descriptive of the recited services.

***Decision***: The refusal to register Applicant's applied-for mark **YOUR CLOUD** under Section 2(e)(1) of the Lanham Act is hereby affirmed.