THIS OPINION IS
A PRECEDENT OF
THE TTAB

Mailed:  March 19, 2015

**UNITED STATES PATENT AND TRADEMARK OFFICE**

————

**Trademark Trial and Appeal Board**

————

In re Matthew Beck

————

Serial No. 85767380

————

Paulo A. De Almeida of Patel & Almeida for Matthew Beck.

John M. Gartner, Trademark Examining Attorney, Law Office 102 (Mitchell Front, Managing Attorney).

————

Before Seeherman, Cataldo and Hightower,
    Administrative Trademark Judges.

Opinion by Cataldo, Administrative Trademark Judge:

Applicant, Matthew Beck, filed an application to register on the Principal Register the mark PORNO JESUS in standard characters for the following goods:  "DVDs featuring music videos, adult themed content, glamour photography, and adult entertainment; video recordings featuring music videos, adult themed content, glamour photography, and adult entertainment" in International Class 9.[1]  In response to the Examining

---

[1] Application Serial No. 85767380 was filed on October 30, 2012, based upon Applicant's assertion of a bona fide intent to use the mark in commerce in connection with the goods.

Attorney's requirement, Applicant disclaimed "PORNO" apart from the mark as shown.

The Trademark Examining Attorney refused registration under Section 2(a), 15 U.S.C. § 1052(a), of the Trademark Act on two grounds.

First, the Examining Attorney refused registration on the ground that the mark sought to be registered consists of or comprises immoral or scandalous matter.

Second, the Examining Attorney refused registration on the ground that the mark includes matter which may disparage or bring into contempt or disrepute persons, institutions, beliefs or national symbols.

When the refusals were made final, Applicant appealed and filed a request for reconsideration. When the Examining Attorney denied the request for reconsideration, this appeal was resumed. Applicant and the Examining Attorney filed main briefs on the issues under appeal and Applicant filed a reply brief.[2] We have considered the disparagement ground

---

[2] Applicant attached portions of the evidentiary record to his appeal brief. Because the entire record is readily available to the Board, such submission is duplicative and unnecessary and is discouraged. *See, e.g., In re Sela Products LLC,* 107 USPQ2d 1580, 1584 (TTAB 2013) ("It is of far more utility to the Board for the applicant and examining attorney to provide citations directly to the record and, when there are a large number of attachments to an Office action or response, to the specific page number where the attachment may be found.").

Applicant also submitted for the first time with his appeal brief a dictionary definition of "adultery," along with a request that the Board take judicial notice thereof. Applicant's request for judicial notice is granted inasmuch as the Board may take judicial notice of dictionary definitions including online definitions if the dictionary is readily available and verifiable. Trademark Trial and Appeal Board Manual of Procedure ("TBMP") § 704.12 (2014) and authorities cited therein. We observe, nonetheless, that we did not rely upon this definition in making our determination herein.

for refusal and find it correct and supported by the evidentiary record. Accordingly, we need not reach the scandalousness ground for refusal.

**Discussion:**

The Examining Attorney argues that the mark PORNO JESUS may be disparaging to Christian-Americans inasmuch as it links Jesus Christ with pornography. Applicant argues that the Examining Attorney has failed to meet his burden of demonstrating that PORNO JESUS is a disparaging term under Section 2(a) of the Trademark Act.

*Evidence Submitted by the Examining Attorney and Applicant*

In support of his argument that the mark PORNO JESUS may disparage Christian-Americans, the Examining Attorney submitted with his March 7, 2013 Office Action numerous dictionary definitions and encyclopedia entries regarding the terms comprising the mark.[3] The following are illustrative.

- Porno:  (Adjective Informal) pornographic;[4]

- Pornographic:   (Adjective)  showing or talking about sexual activities in a very obvious way that is intended to make people sexually excited.[5]

- Jesus:  (Noun) the Jewish religious teacher whose life, death, and resurrection as reported by the Evangelists are the basis of the Christian message of salvation – called also Jesus Christ;[6]

---

[3]  The Examining Attorney submitted a "Taboo, Slang" definition of "Jesus" from the "English Worldwide" database of Collinsdictionary.com rather than the "American" database. We cannot determine whether this definition reflects American English usage. As a result, we give this definition no consideration.

[4] Macmillandictionary.com.

[5] *Id.*

[6] Merriam-webster.com.

- Jesus: (biographical name) Jesus of Nazareth; the Son of Mary, source of the Christian religion & Saviour in the Christian faith.[7]

- Christianity: major religion stemming from the life, teachings, and death of Jesus of Nazareth (the Christ, or the Anointed One of God) in the 1st century AD. It has become the largest of the world's religions. Geographically the most widely diffused of all faiths, it has a constituency of more than 2 billion believers.[8]

In addition, we take judicial notice of the following definition of pornography: obscene writings, drawings, photographs, or the like, especially those having little or no artistic merit.[9]

With his September 14, 2013 response, Applicant submitted printed copies of articles from various Internet sources discussing shifting views among Christians on issues including pornography. In particular, Applicant submitted a screenshot from the webpage televictim.com/christianporn, a website devoted to disseminating and supporting Christian pornography, and offering contemporary pornographic video productions marketed toward Christians, showing only married couples who portray married couples in a manner intended to be instructional, inspirational, and in conformance with Christian beliefs. In addition, Applicant submitted copies of the following third-party registrations:[10]

> Reg. No. 3743882 HOOKERS FOR JESUS for "charitable
> services, namely, organizing women's groups to undertake

---

[7] *Id.*

[8] Britannica.com.

[9] Dictionary.com Unabridged, based on <u>The Random House Dictionary</u> (2015).

[10] Applicant also submitted an abandoned third-party application, but such an application, even if live, has probative value only to show that it was filed. *Interpayment Services Ltd. v. Docters & Thiede*, 66 USPQ2d 1463 (TTAB 2003).

projects which benefit the homeless, abused, at risk women and women in transition and pain, while encouraging empowerment among women of all ages and ethnicities";

Reg. No. 4090135 for "entertainment services, namely, an on-going series featuring religious information provided through webcasts and cable television, entertainment services, namely, providing a web site featuring non-downloadable musical performances, musical videos, related film clips, photographs, and other multimedia materials featuring religious information, on-line journals, namely, blogs featuring religious information";

Reg. No. 3118307 JESUS FREAK for "men's, women's and children's clothing, namely, T-shirts, tank tops, sweatshirts, sweatpants, sleepwear, bathing suits, pants, socks, shorts, hats, caps";

Reg. No. 4291551 THE DAY JESUS SPOKE HIP-HOP for "entertainment services, namely, providing a web site featuring photographic, audio, video and prose presentations in the field of Christian living featuring Christian music; on-line journals, namely, blogs featuring Christian living; entertainment services, namely, providing podcasts in the field of Christian living'" and

Reg. No. 3469303 WHO WOULD JESUS SUE? for "printed matter and publications, namely, books and bumper stickers in the field of faith based advocacy."

With his October 12, 2013 Final Office Action, the Examining Attorney submitted evidence consisting of printed copies of webpages from various Internet websites showing membership statistics for various Christian denominations in the United States, as well as webpages, including the following, which discuss the views of certain denominations toward pornographic materials:

5

- Bpnews.net Baptist Press article from October 11, 2013 discussing a Southern Baptist Convention initiative seeking commitments from 1 million men to live pornography free;

- Umsexualethics.com article discussing United Methodist Church position that use of pornography in church programs, on church premises or property by persons in a ministerial role is considered sexual misconduct;

- Lds.org article defining pornography in a manner consistent with the above dictionary definitions, discussing pornography and indicating that members of the Church of Jesus Christ of Latter-day Saints should avoid pornography and oppose its production, distribution and use.

Applicant submitted with his April 7, 2014 request for reconsideration Internet webpage evidence including an article from Wikipedia.org entitled Religious Perspective on Jesus noting the following:

- Christianity views Jesus as the Christ or messiah;

- Islam views Jesus as Isa, one of God's highest ranked and beloved prophets;

- Baha'i Faith considers Jesus to be a manifestation of God; and

- Judaism recognizes Jesus as a man but not the messiah.

*Legal Authorities*

Registration of a mark consisting of matter which may disparage, *inter alia*, "persons," "institutions," or "beliefs" is prohibited under Section 2(a) of the Trademark Act. 15 U.S.C. § 1052(a). To determine whether a proposed mark is disparaging, the Board applies the following two-part test:

> 1) what is the likely meaning of the matter in question, taking into account not only dictionary definitions, but also the relationship of the matter to the other elements in the mark, the nature of the goods or services, and the manner in which the

6

mark is used in the marketplace in connection with the goods or services; and

2) if that meaning is found to refer to identifiable persons, institutions, beliefs or national symbols, whether that meaning may be disparaging to a substantial composite of the referenced group.

*In re Geller,* 751 F.3d 1355, 1358, 110 USPQ2d 1867, 1869 (Fed. Cir. 2014); *In re Tam,* 108 USPQ2d 1305 (TTAB 2013); *In re Lebanese Arak Corp.,* 94 USPQ2d 1215, 1217 (TTAB 2010); *In re Heeb Media LLC,* 89 USPQ2d 1071, 1074 (TTAB 2008); *In re Squaw Valley Development Co.,* 80 USPQ2d 1264, 1267 (TTAB 2006). The burden of proving that a mark is disparaging rests with the USPTO. *Squaw Valley,* 80 USPQ2d at 1271. *See also In re Boulevard Entertainment, Inc.,* 334 F.3d 1336, 67 USPQ2d 1475, 1477 (Fed. Cir. 2003) (*citing In re Mavety Group, Ltd.,* 33 F.3d 1367, 31 USPQ2d 1923 (Fed. Cir. 1994)).

Whether a proposed mark is disparaging must be determined from the standpoint of a substantial composite of the referenced group (although not necessarily a majority) in the context of contemporary attitudes. *See In re Geller,* 110 USPQ2d at 1872; *Blackhorse v. Pro-Football, Inc.,* 111 USPQ2d 1080 (TTAB 2014); *Squaw Valley,* 80 USPQ2d at 1269; *Harjo v. Pro-Football, Inc.,* 50 USPQ2d 1705, 1758 (TTAB 1999), *rev'd on other grounds,* 284 F. Supp. 2d 96, 68 USPQ2d 1225 (D.D.C. 2003).

The analysis of a mark subject to a refusal to register or inter partes claim based on disparagement depends on the facts of the particular case, with the result that the involved mark may be found to be, *inter alia*: (1) an innocuous

term that in the context of the goods or services is disparaging, *Lebanese Arak,* 94 USPQ2d at 1223 (likely meaning of KHORAN is the Islamic holy text and use for wine disparages religion and beliefs of Muslim-Americans); or (2) a disparaging term that may have a nondisparaging meaning in a specific context, *Squaw Valley*, 80 USPQ2d at 1282 (SQUAW when used solely with ski-related goods and services means Squaw Valley ski resort under the first part of the test); or (3) a term that is disparaging, regardless of the applicant's goods or services, *In re Heeb Media LLC*, 89 USPQ2d 1071 (TTAB 2008) (applicant's good intentions and inoffensive goods and services do not obviate finding that HEEB is disparaging to Jewish-Americans in context of the goods and services; mixed opinion among members of the referenced group does not erase the perception of a substantial composite who find it disparaging).

*Findings/Analysis*

We must first determine, based on the evidence of record, the "likely meaning" of the mark PORNO JESUS; and then, if there is a meaning that invokes a group of persons, turn to consider whether that meaning may be disparaging to a substantial composite of the referenced group.

*What is the likely meaning?*

There is no dispute that "Jesus" in Applicant's mark refers to Jesus of Nazareth, upon whom the Christian faith is based. Applicant acknowledges this meaning, and does not assert any alternate meaning. *Cf. In re Over Our*

8

*Heads Inc.*, 16 USPQ2d 1653 (TTAB 1990) (the mark MOONIES and design with naked buttocks substituted for the letters "O" used for a doll that "moons" would be perceived as indicating that the doll moons, rather than as a reference to members of The Unification Church). We observe that the meaning of "Jesus" in the context of Christianity is a commonly known fact. In addition, the dictionary definitions excerpted above clearly establish that "Jesus" describes Jesus of Nazareth, the source of the Christian religion. Similarly, the evidence of record clearly establishes that "porno" describes pornographic or sexually explicit materials that depict sexual activity in an obvious manner. Applicant and the Examining Attorney also agree on this meaning.

Thus, the likely meaning of the mark PORNO JESUS, taken as a whole, is Jesus of Nazareth partaking of acts related to pornographic or sexually explicit materials. We see no alternate meanings for the terms comprising the PORNO JESUS mark that might lend a different meaning to the whole, and Applicant offers none. We believe that this would be the meaning ascribed to the mark no matter what the goods or services with which it is used, but particularly so in connection with the goods identified in the application. In this respect, it is like the mark HEEB, potentially disparaging regardless of an applicant's goods or services, actual use or intent.

Nonetheless, to be complete, we also consider the "manner in which the mark is used in the marketplace in connection with the goods or services,"

*Lebanese Arak,* 94 USPQ2d at 1217. As identified in the involved application, Applicant's goods include DVDs and video recordings featuring, *inter alia*, "adult themed content," which Applicant acknowledges includes "pornographic films."[11] Thus, it is clear that PORNO JESUS, used on or in connection with the identified goods, would have the "likely meaning" of Jesus Christ associated with pornographic acts and sexually explicit materials.

> *Is the meaning of the mark one that may be disparaging to a substantial composite of the referenced group?*

Having determined the likely meaning of PORNO JESUS, we must now determine whether the mark is disparaging to a substantial composite of the referenced group. In this case, because "Jesus" in the mark PORNO JESUS clearly refers to Jesus of Nazareth, the individual upon whom the Christian faith is based, we find that the group that may be disparaged consists of Christian-Americans.

The mark PORNO JESUS associates Jesus Christ with participating in pornography or otherwise being connected with pornographic materials. Thus, the plain meaning of the terms comprising the mark PORNO JESUS, which links Jesus with pornography, supports a finding that the mark may disparage Christian-Americans. The connection between Jesus and pornographic or sexually explicit materials engendered by the mark is emphasized in this case inasmuch as the identification of goods indicates that

---

[11] Applicant's brief, p. 8.

Applicant intends to use his mark in connection with sexually explicit materials.

The Examining Attorney's evidence from the Internet websites of several Christian denominations demonstrates that these denominations oppose pornography, its use, distribution and production. This evidence further demonstrates that a segment of the Christian-American population considers the making, distribution and viewing of pornography to be harmful, and not in conformance with the tenets of Christianity.

Applicant appears to argue that Christian-Americans cannot be disparaged by his mark because it does not refer to Christians or Christian-Americans, per se:

> There is no "religious order" called JESUS. The evidence shows that "Christianity" is the name of a religious order, and that "Jesus" refers to the historical "Jesus of Nazareth", which is not a religious "belief or tenet" under Section 2(a). Moreover, the followers of Christian teachings are not called "JESUS". To be disparaging, Section 2(a) strictly requires that the mark must focus on the group of persons that adhere to the beliefs or tenets.[12]

Applicant is correct that we must focus our determination of the issue of disparagement on the referenced group – in this case, Christian-Americans – and we have done so. We further agree that the evidence of record does not support a finding that "Jesus" is the name of a religious order. However, it is not necessary that the mark itself identify the name of a religious order,

---

[12] 7 TTABVue 14. Record citations are to TTABVue, the Trademark Trial and Appeal Board's publically available docket history system. *See Turdin v. Trilobite, Ltd.*, 109 USPQ2d 1473, 1476 n.6 (TTAB 2014).

belief or tenet in order to be found disparaging to adherents of that belief. For instance, in *Lebanese Arak*, 94 USPQ2d at 1223, we found that the likely meaning of the term KHORAN is the Islamic holy text and its use for wine disparages the beliefs of Muslim-Americans, who are not themselves referred to as "Khoran."

We note that the Examining Attorney relies heavily upon the *Lebanese Arak* decision, and tries to fit the facts of the instant case into the analytic framework of that case. However, in *Lebanese Arak* it was the association of the Islamic holy text with wine, which Muslims are forbidden to drink, that made the mark KHORAN disparaging to Muslim-Americans. This case differs from the facts of *Lebanese Arak* because the mark PORNO JESUS disparages Christian-Americans on its face by associating Jesus of Nazareth with pornography or sexually explicit materials. In this regard, the mark PORNO JESUS, like HEEB, may be found disparaging regardless of the goods to which the mark is affixed.

Applicant argues that the Examining Attorney's evidentiary showing fails because

> the Examining Attorney has not submitted any evidence supporting the proposition that the term "Jesus" is "so uniquely and unmistakably associated with Christians as to constitute their identity". On the contrary, "Jesus" has been appropriated by a variety of different religious groups, including Islam, Judaism, Bahá'í, Scientology, and Raëlism. [citations to the record omitted.] Notably, Jesus plays an important role in the Islamic faith. The mere fact that Jesus plays an important role [sic] other religions shows that "Jesus" is not "uniquely" and "unmistakably" associated with Christians as to "constitute

their identity". Given the appropriation of Jesus by many religious groups, Christians would not be uniquely offended by any perceived misuse of "Jesus".[13]

However, it is not necessary for the Examining Attorney to demonstrate that "Jesus" is "so uniquely and unmistakably associated with Christians as to constitute their identity" in order to support a refusal based upon disparagement under Section 2(a) of the Trademark Act. Applicant's arguments with regard to pointing uniquely to the Christian religion or its adherents would be relevant if the refusal were based on the Section 2(a) prohibition of registration of matter which may falsely suggest a connection with institutions or beliefs, but that is a different statutory basis to refuse registration, one which the Examining Attorney did not interpose in this case. *Cf., e.g., Bd. of Trs. Of Univ. of Ala v. Pitts*, 107 USPQ2d 2001 (TTAB 2013). Furthermore, the mere fact that Jesus plays a role in religions other than Christianity does not diminish the potential for the mark PORNO JESUS to be disparaging to a substantial composite of Christian-Americans. If anything, it suggests that *additional* religious groups may be disparaged to some degree by the mark. It is not necessary for the Examining Attorney to prove either that the mark is uniquely disparaging to Christian-Americans or, conversely, also disparaging to members of other religions in which Jesus plays a part.

Applicant further argues that the Examining Attorney's reliance upon *Lebanese Arak* is misplaced because

---

[13] 7 TTABVue 15.

> While the Koran is well known to strictly prohibit alcohol, the prohibition of pornography is not uniquely Christian, and there is nothing in the record to suggest that Applicant's Mark is particularly disparaging to Christians as opposed to other groups which may also find pornography distasteful or offensive.[14]

However, there is no requirement for the Examining Attorney to show that practitioners of Christianity uniquely find pornographic materials to be offensive in order to support a finding that PORNO JESUS may disparage Christian-Americans. That non-Christian individuals or groups may also find Applicant's goods distasteful simply does not aid Applicant in traversing the refusal to register.

> Applicant also argues that his mark should be allowed to register because

>> other offensive "JESUS" marks were allowed, including HOOKERS FOR JESUS and REDNECK JESUS. Neither of these was found to be "disparaging", and both are more "offensive" than PORNO JESUS. Applicant's Mark should not be treated differently, and all doubt should be resolved in favor of the Applicant.[15]

Applicant's argument that other potentially disparaging or otherwise offensive marks consisting in part of the word JESUS have been registered cannot assist him in traversing a refusal to register a disparaging term. It is well-established that even if marks in prior registrations have some characteristics similar to Applicant's mark, the USPTO's allowance of such prior registrations does not bind the Board. *In re Nett Designs Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001). "The fact that, whether

---

[14] *Id.*
[15] *Id.*

because of administrative error or otherwise, some marks have been registered even though they may be in violation of the governing statutory standard does not mean that the agency must forgo applying that standard in all other cases." *In re Boulevard Entertainment, Inc.,* 67 USPQ2d at 1480.[16] We also note that none of the third-party registrations relied upon by Applicant associate Jesus Christ with pornographic materials, and none identifies adult-themed materials.

Applicant argues in addition

> the Examining Attorney has not shown that a substantial composite of contemporary Christians would be disparaged by Applicant's Mark. As discussed above, contemporary Christians have a much more liberalized approach to sexuality and even participate in once-"grave offenses" such as homosexuality, adultery, and viewing pornography.[17]

In this regard, we acknowledge Applicant's Internet evidence of the existence of a sub-genre of Christian-themed pornographic movies, featuring married couples portraying married couples engaged in sex acts intended to be instructional and reflecting the beliefs of some Christians. However, the existence of a sub-genre of Christian-themed pornography suggests that the larger body of pornography in general does not reflect Christian beliefs. Moreover, Applicant's identification of goods does not restrict them to a type that theoretically may be acceptable to certain Christians. Further, the Examining Attorney need not show that the entirety, or even a majority, of

---

[16] We do not opine on whether the third-party registrations made of record by Applicant issued in violation of the Trademark Act. The registrability of those marks is not before us.

[17] 7 TTABVue 16.

15

the referenced group may be disparaged by the mark PORNO JESUS. *Harjo,* 50 USPQ2d at 1758 (TTAB 1999). That there may be some Christians who are not offended by pornographic materials or otherwise enjoy viewing them does not compel a different result. *See In re Heeb Media, LLC*, 89 USPQ2d at 1074 (HEEB disparaging notwithstanding support for mark among some members of referenced group).

In this case, we find that the Examining Attorney has met his burden of showing that Applicant's mark is disparaging to a substantial composite of Christian-Americans and Applicant has not satisfactorily rebutted the *prima facie* case of disparagement. "In evaluating the Examining Attorney's evidence we must be cognizant of the USPTO's limitations in amassing evidence and 'we look only for substantial evidence, or more than a scintilla of evidence, in support of the PTO's prima facie case.'" *Heeb Media*, 89 USPQ2d at 1078 (*quoting In re Pacer Technology*, 338 F.3d 1348, 67 USPQ2d 1629, 1632 (Fed. Cir. 2003)). *See also Squaw Valley*, 80 USPQ2d at 1272. Further, in the absence of direct evidence, the Office may meet its burden by extrapolating from the evidence of record that a substantial composite of Christian-Americans find Applicant's use of PORNO JESUS for the identified goods to be disparaging. *Squaw Valley*, 80 USPQ2d at 1272.

Finally, and as we have observed in similar cases, our decision is limited to the registration of the mark and does not concern the use of Applicant's mark. *See, e.g., FirstHealth of Carolinas, Inc. v. CareFirst of Md., Inc.*, 479

F.3d 825, 81 USPQ2d 1919, 1921 (Fed. Cir. 2007) ("The Board is empowered to determine only the right to register. The Board is not authorized to determine the right to use . . . .") (citation omitted); *In re Four Seasons Hotels Ltd.*, 987 F.2d 1565, 26 USPQ2d 1071, 1072 (Fed. Cir. 1993) ("Denial of registration does not deny the owner the right to use the mark . ...")..

**Decision:** The refusal to register under Section 2(a), on the ground that the mark PORNO JESUS may disparage Christian-Americans, is affirmed. Because we affirm the refusal on this basis, we do not reach the alternative basis of refusal asserted by the Examining Attorney, *i.e.*, that the mark is also scandalous under Section 2(a).